**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ESSAR STEEL ALGOMA INC.,

               Plaintiff,

       -against-

SOUTHERN COAL SALES CORPORATION,

             Defendant.

Case No. 1:17-mc-00360-AT

---

**PLAINTIFF ESSAR STEEL ALGOMA INC.'S**
**AMENDED COMPLAINT FOR BREACH OF CONTRACT**

Plaintiff Essar Steel Algoma Inc. ("**Algoma Canada**"), an applicant in a foreign proceeding (the "**CCAA Proceeding**") under Canada's Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") pending before the Ontario Superior Court of Justice, Commercial List (the "**Canadian Court**"), hereby files this Amended Complaint for Breach of Contract (the "**Amended Complaint**") against Defendant Southern Coal Sales Corporation ("**Southern Coal**").

## JURISDICTION AND VENUE

1.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). Algoma Canada is organized and exists under the laws of Ontario, Canada, and its principal place of business is in Ontario, Canada.  Southern Coal is a Delaware corporation, and its principal place of business is in Virginia.  Further, the matter in controversy exceeds $75,000.

2.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b).

3.     Southern Coal is subject to the personal jurisdiction of this Court and has waived any objection to personal jurisdiction or venue.

1

## THE PARTIES

4.      Plaintiff Algoma Canada is organized and exists under the laws of Ontario, Canada with its principal place of business in Sault Ste. Marie, Ontario, Canada.

5.      Upon information and belief, Southern Coal is a Delaware corporation with its principal place of business located at 302 S. Jefferson Street, Roanoke, Virginia 24011.

## NATURE OF THE CLAIM

6.      This Amended Complaint arises from the Coal Supply Agreement dated November 1, 2015 (the "**Original Agreement**"), the Amending Agreement to Coal Supply Agreement dated April 25, 2016 (the "**Amending Agreement**"), and the Term Sheet dated September 22, 2016 (the "**Term Sheet**," and, collectively with the Original Agreement and the Amending Agreement, the "**Agreements**") between Algoma Canada and Southern Coal.

7.      Southern Coal has repeatedly breached the Agreements after the filing of the CCAA by failing to deliver the quantity of coal to Algoma Canada as specified by the Agreements and by delivering coal that does not meet the quality specifications set forth in the Agreements.

8.      Each and every claim that Algoma Canada asserts herein arises after the commencement of the CCAA.

9.      Pursuant to the Amending Agreement, between April 1, 2016 and March 31, 2017, Southern Coal was required to deliver to Algoma Canada a total of 780,000 tons of coal, which represents approximately 56% of Algoma Canada's annual coal requirements.

10.      Southern Coal delivered only 246,526 tons of coal to Algoma Canada during that period.

11.     Timely coal delivery is very important for Algoma Canada's production of coke and could cost Algoma hundreds of millions of dollars should coke production be forced to stop due to lack of sufficient, timely coal deliveries of the right quality.

12.     Additionally, Southern Coal delivered coal that was not sampled and analyzed as required by the Agreements and that did not meet the quality specifications set forth in the Agreements.  Yet, Southern Coal refused to pay Algoma Canada the penalties set forth in the Agreements for failure to conform to the quality specifications.

13.     Accordingly, Algoma Canada seeks an award of other damages, costs, and fees as set forth below.

## BACKGROUND

### *CCAA Proceeding and Chapter 15 Background*

14.     On November 9, 2015, Algoma Canada and certain of its affiliates commenced the CCAA Proceeding in the Canadian Court, and the Canadian Court entered the CCAA Initial Order granting certain interim relief in connection with the CCAA Proceeding.

15.     Also on November 9, 2015, the Foreign Representative commenced these chapter 15 cases by filing, among other things, verified chapter 15 petitions seeking recognition by this Court of the CCAA Proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code.

16.     On December 1, 2015, the U.S. Bankruptcy Court, District of Delaware, entered an order (as amended from time to time) recognizing the CCAA Proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code and granting related relief.

17.     The objective in the CCAA Proceeding is to successfully restructure the Algoma Canada's business operations and exit CCAA protection through a sale or plan transaction.

18.      There is a substantial need for financing in connection with Algoma Canada's exit from the CCAA Proceeding which requirement is approximately US$300 million.

19.     The multi-million dollar recovery through this action will positively impact the CCAA proceedings in a meaningful manner by reducing the current DIP Facility which, in turn, will reduce the financing needed to ensure a smooth exit from the CCAA Proceeding for the benefit of the Algoma estate and its creditors.

20.     The Foreign Representative refers the Court to the Declaration of J. Robert Sandoval in Support of (I) Verified Chapter 15 Petitions; (II) Foreign Representative's Motion for Orders Granting Provisional and Final Relief in Aid of Foreign Main Proceeding; and (III) Certain Related Relief.  (Doc. 6 in the Delaware bankruptcy proceeding.)

*Factual Background*

21.     Algoma Canada is an integrated primary steel producer with its principal place of business in Sault Ste. Marie, Ontario, Canada.

22.     Southern Coal is in the business of producing, procuring, and selling coal.

23.     Algoma Canada usually buys coal via annual contracts which is delivered by vessel between April and December each year.  Southern Coal is one of the coal producers from whom Algoma Steel buys coal via an annual contract.

24.     Algoma Canada uses the coal it purchases from Southern to make metallurgical coke.  The cokemaking process involves the carbonization of the coal to high temperatures in an oxygen deficient atmosphere in order to concentrate the carbon.

25.     Coke is produced in a coke battery, which is comprised of many coke ovens that are stacked into rows into which coal is loaded.

26.     Once the coke is produced, Algoma Canada feeds the coke into the blast furnace with iron ore and small quantities of fluxes (minerals, such as limestone, which are used to collect impurities). Then, air heated to over 2,000°F is blown into the blast furnace. The air causes the coke to burn, producing carbon monoxide which reacts with the iron ore, as well as heat, to melt the iron.

27.     If the coke batteries are forced to stop production due to lack of coal, it would cost Algoma Canada hundreds of millions of dollars to repair and restart them.

## The Agreements

28.     On or about November 1, 2015, Algoma Canada and Southern Coal entered into the Original Agreement, by which Algoma Canada would buy coal from Southern on a consignment basis.  A copy of the Original Agreement is attached as Exhibit A.[1]

29.     The original term of said agreement was from November of 2015 – March 31, 2017, and it was divided into the First Contract Year (November 1, 2015 – March 31, 2016) and the Second Contract Year (April 1, 2016 – March 31, 2017).  Original Agreement, § 2.1.

30.     Algoma Canada and Southern Coal agreed that they would "cooperate in good faith to establish a rail and lake delivery schedule that shall reasonably accommodate the deliveries called for hereunder."  Original Agreement, § 4.1.  Southern Coal was responsible for rail transportation while Algoma Canada was responsible for vessel transportation.

31.     The parties agreed to design a delivery schedule by which Southern Coal would load the coal onto train cars at its mine, and the trains would take the coal to either

---

[1] Algoma Canada has requested that each of the exhibits to the Amended Complaint be filed under seal because they contain confidential pricing and other commercial information.

Sandusky or Toledo, Ohio, where Southern Coal would load it onto vessels that Algoma Canada provided.  Thereafter, the vessels would travel from Ohio across the Great Lakes to the Port of Algoma Canada in Sault St. Marie, Ontario.  Original Agreement, § 4.1.

32.     Having consistent, predictable deliveries of coal is vital to Algoma Canada's business. Algoma Canada must build up a sufficient inventory of coal before the winter months, when the Great Lakes freeze such that shipment by vessel is impossible, so that it can continue to make coke (and ultimately steel) throughout the winter.

33.     Additionally, if Algoma Canada does not receive sufficient, timely coal deliveries before the winter, its coke batteries will be stopped and it will require hundreds of millions of dollars to repair and restart them.

34.     On or about April 25, 2016, with full knowledge of the CCAA and chapter 15 bankruptcy proceedings, and in fact referencing such proceedings in the amendment, Southern Coal and Algoma Canada entered into the Amending Agreement, which modified certain provisions of the Original Agreement.  A copy of the Amending Agreement is attached as Exhibit B.

35.     Algoma Canada agreed to purchase both Type A High Vol Coal ("**HVA**") coal and Type B High Vol Coal ("**HVB**") coal during the Second Contract Year at the pricing set forth in the Amending Agreement.  Amending Agreement, § C.

36.     Algoma Canada was required to pay Southern Coal "a deposit of 10% of the purchase price for each train of coal prior to loading by [Southern Coal]" (hereinafter, the "**Deposit**"). The Deposit was to "remain with [Southern Coal] during the period of [Algoma Canada]'s performance" under the Agreements, and was to be adjusted against remaining inventory when the contract terminated.  Original Agreement, § 6.2(a).

6

37.     During the time the Agreements were in effect, the amount of Algoma Canada's Deposit grew to approximately $6,100,000.00, and Southern Coal is still currently in possession of the Deposit.

38.     Algoma Canada made payments to Southern for each of the shipments of coal that Southern actually delivered to Algoma Canada and that Algoma Canada actually consumed as required during the Second Contract Year period.

39.     On or about October 4, 2016, again, with full knowledge of the CCAA and these chapter 15 bankruptcy proceedings and referencing such proceedings in the Term Sheet, Southern Coal and Algoma Canada executed the Term Sheet, which was effective as of September 22, 2016.  The Term Sheet modified certain provisions of the Original Agreement and Amending Agreement and left others intact.  It was meant to reflect "certain changes agreed by the Parties and where the Parties agreed to be bound until such time as a more formal Second Amendment can be agreed and formalized by the Parties." (Term Sheet, Recitals).  A copy of the Term Sheet is attached as Exhibit C.

40.     No such Second Amendment was ever agreed upon or formalized.

**<u>Quantity of Coal that Southern Coal Was Required to Deliver</u>**

41.     Pursuant to the Original Agreement, for the Second Contract Year, Algoma Canada was to purchase from Southern Coal "at least 65% of the coal budgeted to be consumed by [Algoma Canada] at the [Algoma] mill for the period April 1, 2016 – March 31, 2017 . . . based upon a forecast of 1.4mm tons of coal to be consumed by [Algoma Canada] during this period," which equaled 910,000 tons.  Original Agreement, § 3.3.

42.     Pursuant to the Amending Agreement, the Parties agreed to reduce the quantity of coal that Southern Coal would deliver during the Second Contract Year.  The Parties

amended Section 3.3 of the Original Agreement to state that Southern Coal would deliver a minimum of 780,000 tons of coal (140,000 of minimum of HVA and 640,000 tons of minimum HVB).  The Parties also agreed that Southern Coal would deliver a minimum of 16,000 tons of coal per week.  Amending Agreement, § A.

43.     Algoma Canada reduced the quantity of coal it would take from Southern Coal in the Second Contract Year in large part because Algoma Canada had serious concerns regarding the quality of coal it would receive from Southern Coal.

44.     During the First Contract Year, 100% of the Low Volatile coal that Southern Coal delivered and 65% of the HVA and HVB coal that Southern delivered were within penalty range.

45.     After it was clear that Southern Coal had fallen significantly behind in deliveries, in September of 2016, the Parties agreed to the Term Sheet, in order to set a specific schedule by which Southern Coal would deliver 200,000 tons of the original 780,000 tons of coal between August 29, 2016 and December 24, 2016.  Term Sheet, § 1.  This was in reponse to Southern Coal's representation to Algoma Canada that it was unable to deliver more than 200,000 tons for the remainder of the year.

**Non-Term Sheet Shortfall**

46.     Pursuant to the Amending Agreement, Southern Coal was required to deliver a total of 780,000 tons during the Second Contract year, 200,000 tons of which would ultimately be delivered pursuant to the specific delivery schedule set forth in the Term Sheet (as set forth in detail below).

47.     Thus, there were 580,000 tons that Southern Coal was required to deliver during the Second Contract Year in addition to the 200,000 Term Sheet tons scheduled to be delivered between September 18, 2016 – December 24, 2016.

48.     Southern Coal delivered only 201,163 of those 580,000 non-Term Sheet tons (101,254 tons of HVA coal and 99,909 tons of HVB coal) during the Second Contract Year.

49.     Algoma Canada repeatedly notified Southern Coal that it had failed to meet its delivery obligations pursuant to the Amending Agreement, and Algoma Canada reserved all of its rights thereunder.

50.     In order to build sufficient coal inventory before the Great Lakes froze and vessel shipments became impossible, Algoma Canada was forced to purchase along the way the majority of the remaining 378,837 tons that Southern Coal was to deliver pursuant to the Amending Agreement from third parties.  This will result in Algoma Canada paying higher prices per ton for the 378,837 tons that Southern Coal failed to deliver during the Second Calendar Year, at a total additional cost in excess of $7,000,000.00.

51.     Additionally, Algoma Canada's procurement and logistics teams were forced to spend extraordinary amounts of time and effort to secure sufficient alternate suppliers that resulted in significant operational costs to Algoma Canada.


**Term Sheet Shortfall**

52.     The Term Sheet governed the delivery of 200,000 tons of coal (50,000 tons of HVA coal and 150,000 tons of HVB coal) in the fall of 2016.

53.     The Term Sheet laid out a specific delivery schedule by which Southern was to ship two trains per week between September 18, 2016 and October 22, 2016 and one train per week between October 23, 2016 and December 24, 2016.  Term Sheet, § 2.

54.     Each train could have carried between approximately 12,000 and 15,000 tons of coal.

55.     Southern Coal did not comply with the delivery schedule set forth in the Term Sheet.

56.     Southern Coal delivered only 45,363 total tons of coal (18,434 tons of HVA coal and 26,929 tons of HVB coal) between September of 2016 and December of 2016.

57.     Because Southern Coal's shipments had historically been so erratic and significantly behind schedule, Algoma Canada and Southern Coal expressly agreed in the Term Sheet that "[i]f there is any shortfall, Algoma Canada can purchase any shortfall tonnages from any other third party.  [Southern Coal] shall pay to [Algoma Canada] the cost for the alternate coal that [Algoma Canada] purchases from other source(s).  If a shipment is missed by [Southern Coal], then [Southern Coal] is in breach of the terms and in default."  Term Sheet, § 2.

58.     Additionally, the Parties agreed that "effective 25 September 2016 if a shipment is missed by [Southern Coal], [Algoma Canada] has the option to cease payment, purchase the missed shipment volume from a third party and charge [Southern Coal] the costs, and/or terminate the Term Sheet and/or the Agreement.  For any third party coal purchased under this section and prior to any payment by [Southern Coal], [Algoma Canada] must provide [Southern Coal] with evidence of the cost of the replacement coal including that the coal purchased is like quality, the transportation cost paid, etc."  Term Sheet, § 2.

10

59.     Algoma Canada purchased the remaining 154,637 tons that Southern Coal was to deliver pursuant to the Term Sheet from third parties at higher prices per ton and with significant transportation expenses, at a total cost in excess of $6,500,000.00.

60.     The additional transportation and storage expenses Algoma Canada has been forced to incur as a result of Southern Coal's breach continue to accrue.

61.     Additionally, Algoma Canada's procurement and logistics teams were forced to spend extraordinary amounts of time and effort to secure sufficient alternate suppliers that resulted in significant operational costs to Algoma Canada.

62.     Algoma Canada repeatedly notified Southern Coal that it had failed to meet its delivery obligations pursuant to the Term Sheet, and Algoma Canada reserved all of its rights thereunder.

**Quality of Coal that Southern Coal Was Required to Deliver**

63.      Southern Coal was required to provide Algoma Canada with coal that met the specifications set forth in Exhibit 2 to the Original Agreement.  Original Agreement, § 9.1, Ex. 2.

64.     If the coal did not conform to those specifications, and if the deviations were within the rejection limits (identified in Exhibit 2), then Southern Coal was required to "reduce the price of Coal based on the penalties as per Exhibit 2."  Original Agreement, § 9.1.

65.     If the coal varied from the specifications beyond the rejection limits, Algoma Canada could choose to reject the coal.  Original Agreement, § 9.2.

66.     Pursuant to the Amending Agreement, a third party, Mineral Labs, was required to sample the coal Southern Coal was shipping to Algoma Canada "at origin,"

meaning the coal was sampled at Southern Coal's mine while the train cars were loaded with coal.  Amending Agreement, § E.

67.     On September 22, 2016, the Term Sheet modified the sampling and testing procedure set forth in the Amending Agreement.  Pursuant to the Term Sheet, "[c]oal will be sampled at mine-site during loading of the train . . . by Mineral Labs and Standard Lab.  Each lab shall keep a referee sample, which shall be sent to a referee lab (Intertek Lab).  In the case of any dispute related to quality analysis that the Parties are unable to resolve, the referee lab shall test the samples and their analysis results shall be considered final for determining if the coal is to be accepted, rejected, or accepted with penalty."  Term Sheet, § 3.

68.     All sampling and analysis was to be performed in accordance with ASTM standards.  Amending Agreement, § E; Term Sheet, § 3.

69.     Southern Coal was required to provide to Algoma Canada "ten car sub-lot analyses for moisture, ash, sulfur and volatile matter" within 24 hours of completion of the loading of the train cars, while the coal was being shipped to the port to load onto the vessel.  Original Agreement, § 8.1(b).

70.     Although the lab was supposed to perform sampling in addition to analysis, the quality analysis reports that Mineral Labs provided stated that coal was not sampled by the lab.  Rather, the lab reports reflected that Southern Coal had provided Mineral Labs with the samples.

71.     Algoma Canada's own laboratory tested the ash, sulfur, and volatile matter levels of the coal that Southern provided, and found that those levels were often higher than Southern had reported to Algoma Canada.

72.     Based on the coal analysis that Algoma Canada conducted at its lab, it became clear that the samples that Southern Coal provided to the lab for analysis were not samples from the actual coal that Southern Coal shipped to Algoma Canada and that the coal that Southern Coal delivered was actually subject to penalties and/or rejection pursuant to Exhibit 2 of the Original Agreement, though the reports Southern provided reflected that the coal conformed to the specifications.

73.     Algoma Canada notified Southern Coal of these quality issues for the Second Contract Year and reserved all of its rights pursuant to the Amending Agreement and the Term Sheet.

74.     There were 19 separate shipments between May of 2016 and October of 2016 that were subject to rejection and/or penalties pursuant to the Agreements due to ash, sulfur, and volatile matter that exceeded the upper limit or rejection limit.

75.     The total amount of penalties that Southern Coal owes to Algoma Canada for these 19 shipments exeeds $1,200,00.00.

76.     Additionally, although Algoma Canada attempted to blend the off-specification coal that Southern supplied with coal Algoma Canada purchased from other suppliers, often there was insufficient alternate coal available to blend and to ensure that quality of coal was as desired to produce coke that could be used in Algoma Canada's blast furnace. Approximately 8,000 tons of coke were rejected and had to be replaced with coke that Algoma Canada purchased at a total cost in excess of $1,700,000.00.

## FIRST CLAIM FOR RELIEF –BREACH OF CONTRACT
### (TERM SHEET SHORTFALL)

77.     Algoma Canada realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully stated herein.

78.     The Term Sheet, in combination with the Original and Amending Agreement, constitutes a contract between Southern Coal and Algoma Canada, entered into for valuable consideration, that is valid and enforceable.

79.     The Agreements are an installment contract for the sale of goods and are governed by New York's enactment of the Uniform Commercial Code, NY CLS UCC § 1-101 *et seq.*

80.     Pursuant to the Term Sheet, Southern Coal was required to deliver to Algoma Canada 200,000 total tons of coal between August 29, 2016 and December 24, 2016.

81.     Specifically, pursuant to the Term Sheet, Southern Coal was required to deliver 50,000 tons of HVA coal and 150,000 tons of HVB coal.

82.     Southern Coal breached the Term Sheet when it only delivered a total of 45,363 tons of coal between August 29, 2016 and December 24, 2016 and, in so doing, substantially impaired the value of numerous installments and the parties' agreement as a whole.

83.     Specifically, Southern Coal breached the Term Sheet and substantially impaired the value of the Agreements when it only provided Algoma Canada with 18,434 tons of HVA coal and 26,929 tons of HVB coal between August 29, 2016 and December 24, 2016.

84.     Algoma Canada has substantially performed the material terms of the Agreements.

85.     Algoma Canada notified Southern Coal of Southern's breaches, and Algoma Canada reserved all of its rights pursuant to the Agreements.

86.     Southern Coal's failure to timely deliver coal to Algoma Canada as required by the Term Sheet has presently, directly, and proximately caused damage to Algoma Canada in excess of $6,500,000.00, or such other amount to be proven at trial, plus interest.

87.     Despite its obligation to deliver coal to Algoma Canada as provided by the Term Sheet, Southern Coal has failed to deliver the coal as required.  Southern Coal's failure constitutes a breach of the Original Agreement, the Amending Agreement, and the Term Sheet, all of which violates the covenant of good faith and fair dealing.

## SECOND CLAIM FOR RELIEF –BREACH OF CONTRACT
### (NON-TERM SHEET SHORTFALL)

88.     Algoma Canada realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully stated herein.

89.     The Amending Agreement, in combination with the Original Agreement, constitutes a contract between Southern Coal and Algoma Canada, entered into for valuable consideration, that is valid and enforceable.

90.     The Agreements are an installment contract for the sale of goods and are governed by New York's enactment of the Uniform Commercial Code, NY CLS UCC § 1-101 *et seq.*

91.     Pursuant to the Amending Agreement, Southern Coal was required to deliver to Algoma Canada 780,000 total tons of coal between April 1, 2016 and March 31, 2017.

92.     Specifically, pursuant to the Amending Agreement, Southern Coal was required to deliver 140,000 tons of HVA coal and 640,000 tons of HVB coal.

93.     The Term Sheet delineated 200,000 of those tons of coal to be delivered between September and December of 2016, which is the subject of Count I above.

94.      Southern Coal breached the Amending Agreement when it only delivered a total of  201,163 tons (not including the 45,363 tons delivered as described in Count I above) of the remaining 580,000 tons of coal that the Amending Agreement required between April 1, 2016 and March 31, 2017, and in so doing, substantially impaired the value of numerous installments and the parties' agreement as a whole.

95.      The 201,163 tons described in Paragraph 96 consisted of 101,254 tons of HVA coal and 99,909 tons of HVB coal delivered between April 1, 2016 and March 31, 2017 (again, not including the 18,434 tons of HVA coal and 26,929 tons of HVB coal delivered as described in Count I above).

96.      Algoma Canada has substantially performed the material terms of the Agreements.

97.      Algoma Canada notified Southern Coal of Southern Coal's breaches, and Algoma Canada reserved all of its rights pursuant to the Agreements.

98.      Southern Coal's failure to timely deliver coal to Algoma Canada as required by the Amending Agreement has presently, directly, and proximately caused damage to Algoma Canada in excess of $7,000,000.00, or such other amount to be proven at trial, plus interest.

99.      Despite its obligation to deliver coal to Algoma Canada as provided by the Amending Agreement, Southern Coal has failed to deliver the coal as required.  Southern Coal's failure constitutes a breach of the Original Agreement and the Amending Agreement, all of which violates the covenant of good faith and fair dealing.


**THIRD CLAIM FOR RELIEF –BREACH OF CONTRACT**
**(FAILURE TO PROVIDE COAL THAT CONFORMED TO THE CONTRACTUAL QUALITY STANDARDS)**

100.    Algoma Canada realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully stated herein.

101.    The Amending Agreement, in combination with the Original Agreement and Term Sheet, constitutes a contract between Southern Coal and Algoma Canada, entered into for valuable consideration, that is valid and enforceable.

102.    The Agreements are an installment contract for the sale of goods and are governed by New York's enactment of the Uniform Commercial Code, NY CLS UCC § 1-101 *et seq.*

103.    Pursuant to the Original Agreement, Southern Coal was required to deliver to Algoma Canada coal that conformed to the specifications set forth in Exhibit 2 to the Original Agreement.

104.    If Southern Coal failed to provide coal that conformed to the specifications but the deviations were within the rejection limits, Southern Coal was required to reduce the price of the Coal based on the penalties set forth in Exhibit 2 to the Original Agreement.

105.    Southern Coal breached the Agreements when it delivered 19 shipments between May of 2016 and October of 2016 that did not conform to the specifications and thereafter refused to reduce the price of coal accordingly, and, in so doing, substantially impaired the value of numerous installments.

106.    Southern Coal further breached the Agreements when it provided analyses to Algoma Canada that analyzed coal other than what it shipped to Algoma Canada and/or provided inaccurate analyses.

107.    Southern Coal also breached the Agreements when it provided samples to the lab for analysis, instead of allowing the lab to sample the coal.

17

108.   Algoma Canada has substantially performed the material terms of the Agreements.

109.   Algoma Canada notified Southern Coal of Southern Coal's breaches, and Algoma Canada reserved all of its rights pursuant to the Agreements.

110.   Southern Coal's failure to deliver coal to Algoma Canada that conformed to the contractual specifications and failure to reduce the price of the coal accordingly has presently, directly, and proximately caused damage to Algoma Canada in excess of $2,500,000, or such other amount to be proven at trial, plus interest.

111.   Despite its obligation to deliver coal to Algoma Canada that meets the specifications provided by the Agreements or reduce the price of the coal if it does not meet the specifications, Southern Coal has failed to deliver the coal as required.  Southern Coal's failure constitutes a breach of the Agreements, all of which violate the covenant of good faith and fair dealing.

**PRAYER FOR RELIEF**

**WHEREFORE**, Algoma Canada prays for this Court to:

A.   Enter judgment in favor of Algoma Canada and against Southern Coal on Counts I, II, and III and order Southern Coal to pay damages to Algoma Canada, including pre- and post-judgment interest, for Southern Coal's breach of the Agreements; and

B.   Award Algoma Canada such other and further relief as the Court finds just and proper.

Respectfully submitted,

**THOMPSON HINE LLP**

Dated: April 23, 2018              By: */s/ Kip T. Bollin*         

                        Kip T. Bollin (*admitted pro hac vice*)
                        Laura L. Watson (*admitted pro hac vice*)
                        Mark R. Butscha, Jr.
                        3900 Key Center, 127 Public Square
                        Cleveland, OH 44114
                        Tel: (216) 566-5500
                        Fax: (216) 566-5800
                        Email: kip.bollin@thompsonhine.com
                        Email: laura.watson@thompsonhine.com
                        Email: mark.butscha@thompsonhine.com

                        -and-

                        Rebecca A. Brazzano
                        335 Madison Ave., 12th Floor
                        New York, NY 10017-4611
                        Tel:  (212) 344-5680
                        Fax:  (212) 344-6101
                        Email: rebecca.brazzano@thompsonhine.com

                        *Attorneys for Plaintiff Essar Steel Algoma Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of April, 2018, a copy of the foregoing was served via the Court's ECF system to all counsel of record.

*/s/ Kip T. Bollin*
One of the Attorneys for
Plaintiff Essar Steel Algoma, Inc.