| | | |
|---|---|---|
| UNITED STATES DISTRICT COURT | | USDC SDNY |
| SOUTHERN DISTRICT OF NEW YORK | | DOCUMENT |
| | | ELECTRONICALLY FILED |
| | | DOC #:_____ |
| | | DATE FILED: 10/29/2018 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ESSAR STEEL ALGOMA INC.,                :     17 Misc. 360 (AT) (RWL)

                 Plaintiff,            :     **DECISION AND ORDER**

           - against -            :

SOUTHERN COAL SALES CORPORATION,    :

                Defendant.          :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

       Plaintiff Essar Steel Algoma Inc. ("Algoma") brings this action against Defendant Southern Coal Sales Corp. ("Southern Coal") for breach of a coal supply contract. Algoma seeks leave to file a second amended complaint that would, among other things, add numerous "alter-ego" defendants. For the following reasons, Algoma's motion is GRANTED in part and DENIED in part.

## Background

       Algoma originally filed this case in a bankruptcy adversary proceeding in the District of Delaware, where Southern Coal is incorporated. Southern Coal invoked a forum selection clause, and the case was transferred to this district in September 2017. On April 25, 2018, Algoma filed a first Amended Compliant ("FAC"), which currently is the operative complaint. Fact discovery comes to a close on October 31, 2018.

       In the FAC, Algoma asserts three claims for breach of contract. Those claims stem from a term sheet and series of agreements for supply of coal to Algoma by Southern Coal (the "Agreements"). Under the Agreements, Southern Coal was obligated to supply Algoma with over half its coal-supply needs for a total of 780,000 tons of coal. Algoma

alleges that Southern Coal breached the Agreements by delivering only 246,526 tons of coal, less than a third of the contracted amount. Algoma further alleges that coal delivered by Southern Coal was not analyzed as it should have been and did not meet quality specifications required by the Agreements.

On September 5, 2018, Algoma sought leave to file a second amended complaint. Algoma asserted that it had first learned of the facts supporting an alter-ego theory during deposition taken the week of March 12, 2018. (Dkt. 53 at p.4.) After receiving opposition from Southern Coal, the Court held a hearing on October 2, 2018 to discuss the issue.

At the hearing, the Court expressed skepticism about whether the proposed pleading contained sufficient detail to support the alter-ego amendments. Accordingly, the Court ordered Algoma to file a revised proposed Second Amended Complaint ("SAC") to "include allegations with respect to each new proposed defendant that are sufficient to support a plausible alter-ego claim vis-à-vis the currently named defendant." (Dkt. 62 at ¶ 1.) The Court's order also addressed remaining discovery, taking into account the imminent deadline for the conclusion of fact discovery. The order provided that remaining discovery could encompass Algoma's proposed alter-ego amendments "to the extent such discovery is encompassed within existing demands and depositions previously noticed; no alter-ego discovery shall separately be taken of third parties or any of the proposed additional defendants. In the event the motion to amend is granted, Plaintiff will not be permitted to seek additional discovery on that basis." (Dkt. 62 at ¶ 2.)

Algoma submitted its revised proposed SAC on October 16, 2018. (Dkt. 67.) The SAC names fifteen new defendants, including "Jim" Justice the Governor of West Virginia, his son "Jay" Justice, and twelve business entities of which either one or both of the

Justices are officers. The proposed amended pleading refers to the Justices and the related business entities as the "Justice Parties." The primary purpose of Algoma's proposed amended pleading is to allege that the Justice Parties are alter egos of Southern Coal such that they may be held liable along with Southern Coal. The issue before the Court is whether to grant the motion and allow Algoma to file a second amended complaint that includes the alter-ego allegations.[1]

Southern Coal opposes the alter-ego amendments. It argues that the amendments are futile, come too late, and would prejudice Southern Coal, particularly given the timing of the amendments.

## Legal Standard for Motion to Amend

The standard for granting leave to amend, absent consent, is well-established and set forth in the Federal Rules of Civil Procedure: "The court should freely give leave when justice so requires. Fed. R. Civ. P. 15(a)(2); *see also Aetna Cas. & Surety Co. v. Aniero Concrete Co. Inc.*, 404 F.3d 566, 603-04 (2d Cir. 2005). A district court, however, "has discretion to deny leave for good reason." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). The Second Circuit has held that a Rule 15(a) motion "should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *Aetna Cas.,* 404

---

[1] The proposed amended pleading makes some changes that are independent of the alter-ego allegations (*e.g.,* revising the caption to reflect a name change; deleting obsolete bankruptcy facts; adding a word or two to clarify a given statement; rounding numbers, etc.) Southern Coal has not raised any specific objections to those amendments.

F.3d at 603-04 (quoting *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987)).[2]

## Analysis

**I. Futility**

In opposing the request for leave to amend, Southern Coal focuses mostly on arguing that the proposed alter-ego claims are futile. Southern Coal is correct, but only with respect to two of the newly proposed defendants.

**A. Futility Standard**

"[L]eave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim . . . ." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). To survive a Rule 12(b)(6) motion, a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

---

[2] Algoma's amendments add third parties. Federal Rule of Civil Procedure 21 permits joinder of third parties "at any time, on just terms." Fed. R. Civ. P. 21; *see also City of Syracuse v. Onondaga Cty.*, 464 F.3d 297, 308 (2d Cir. 2006). In practice, the standard for deciding whether to permit joinder under Rule 21 is "the same standard of liberality afforded to motions to amend pleadings under Rule 15." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016) (citing *Rush v. Artuz*, No. 00 Civ. 3436, 2001 WL 1313465, at *5 (S.D.N.Y. Oct. 26, 2001) (quoting *Soler v. G & U, Inc.*, 86 F.R.D. 524, 527-28 (S.D.N.Y. 1980)); *see also Johnson v. Bryson*, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012) ("the showing necessary under Rule 21 is the same as that required under Rule 15(a)").

**B. Applicable Governing Law**

To assess the viability of Algoma's alter-ego claims, the Court must first determine the applicable law. Because Southern Coal is a Delaware corporation and is the entity Algoma alleges to be a mere instrumentality or alter ego of the proposed new defendants, Delaware law controls. *See Taizhou Zhongneng Import & Export Co., Ltd v. Koutsobinas*, 509 Fed. App'x 54, 56 n.2 (2d Cir. 2013) ("New York's choice of law rules provide that the law of the state of incorporation determines when the corporate form will be disregarded") (internal quotations omitted); *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 241 F. Supp. 3d 461, 474 (S.D.N.Y. 2017) (same).

**C. Alter-Ego Elements**

Delaware law has established two ways by which a court may pierce the corporate veil: 1) where a plaintiff alleges fraud; and 2) where a plaintiff alleges the corporation is a "mere instrumentality" or "alter ego of its owner." *NetJets Aviation, Inc. v. LHC Commc'n, LLC*, 537 F.3d 168, 176 (2d Cir. 2008) (quoting *Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del. Ch. 1992)); *De Sole v. Knoedler Gallery, LLC*, 139 F. Supp. 3d 618, 665 (S.D.N.Y. 2015) (same). Algoma does not allege fraud, so its theory to pierce Southern Coal's corporate veil is based on alleging that Southern Coal is a mere instrumentality – *i.e.*, alter-ego – of the Justice Parties.

**1. Domination and Control**

To prove that Southern Coal is a mere instrumentality or alter ego of the Justice Parties, Algoma must show both "a mingling of the operations" of the entities, and that there is "an overall element of injustice or unfairness." *NetJets*, 537 F.3d at 176 (quoting *Harco Nat'l Ins. Co. v. Green Farms, Inc.*, No. CIV. A. 1131, 1989 WL 110537, at *4 (Del

Ch. Sept. 19, 1989)). Delaware law goes further in defining "mingling of the operations of the entity" as "exclusive domination and control" such that the subordinate entity "no longer ha[s] legal or independent significance of [its] own." *Nat'l Gear & Piston, Inc. v. Cummings Power Sys., LLC*, 975 F. Supp. 2d 392, 402 (S.D.N.Y. 2013) (quoting *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) (alteration in original)). In order to determine whether there is "exclusive domination and control," courts consider the following factors:

> [W]hether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

*NetJets*, 537 F.3d at 177 (quoting *Harco*, 1989 WL 110537, at *4).

A plaintiff need not allege all of these factors to survive dismissal, but "some combination of them" is required. *Id.* at 177 (quoting *Harper v. Del. Valley Broad., Inc.*, 743 F.Supp. 1076, 1085 (D. Del. 1990), *aff'd*, 932 F.2d 959 (3d Cir. 1991) (internal citations omitted)). "Stated generally, the inquiry initially focuses on whether 'those in control of the corporation' did not '[treat[] the corporation as a distinct economic entity.'" *NetJets*, 537 F.3d at 177 (quoting *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 989 (Del. Ch. 1987)).

Here, Algoma's amended pleading sets forth sufficient allegations to establish the requisite domination and control of Southern Coal by some but not all of the Justice Parties. In particular, the allegations are sufficient with respect to the corporate entities, but not with respect to Jim Justice and Jay Justice. The SAC sets forth specific allegations supporting the assertion that Southern Coal was undercapitalized and that its

6

funds were siphoned off, further contributing to undercapitalization (*e.g.*, SAC ¶¶ 93, 95-146); though not insolvent, an inability to fund its contractual obligations (*e.g.*, SAC ¶¶ 95-97); varied and mingling of funds, employees and officers between Southern Coal and the other entities (*e.g.*, SAC ¶¶ 89, 161, 167, 170-71, 176-179, 181-82, 184, 186, 191-92, 196, 198, 201, 205, 207, 230). The SAC even purports to quote admissions that the corporate entities are all part of a single operation, alleging, for instance, that Jay Justice collectively refers to the agricultural and mining companies as "the Company" or "the family business" (SAC ¶ 85), and that Southern Coal's agent refers to Southern Coal as "Justice" (SAC ¶ 88).

None of this necessarily means that Algoma will ultimately succeed on its alter-ego claims, either at summary judgment or trial. Much of what Algoma alleges is susceptible to varying interpretation and implication. For example, an employee could well be employed by more than one corporate entity; it is not uncommon for an individual to serve as an officer of more than one related company; and transfer of funds between companies may be nothing more than bona fide corporate transactions reflecting payment for services or goods provided by the company receiving the funds. But, given the standard governing this motion, all such inferences must be made in favor of Algoma.

Further, Algoma has not set forth allegations of every factor considered in the alter-ego analysis, and some of its allegations purporting to show domination and control have little to no relevance to that inquiry (*e.g.*, common email address domains). But, as noted above, a plaintiff need only allege "some combination" of the factors, not all of them. *NetJets*, 537 F.3d at 177. Algoma's allegations are sufficient to plausibly show that

Southern Coal did not operate as a "distinct economic entity" from one or all of the newly named corporate entities.

With respect to the Jim and Jay Justice, however, the allegations are not sufficient. Jim and Jay Justice served as officers of many of the corporate entities. But there are no specific allegations demonstrating that either of them personally dominated Southern Coal in such manner as to disregard its corporate identity vis-à-vis themselves as individuals. None of the fund transfers alleged name Jim or Jay Justice as having mingled their personal funds with the corporate entities or having personally siphoned off funds from those entities for their individual accounts or benefit.[3] None of the allegations suggest that Jim or Jay Justice were acting in their individual capacity rather than their corporate capacity when making decisions on behalf of the various corporate entities.

**2. Injustice or Unfairness**

In order to satisfy the second part of the alter-ego standard, a plaintiff "must allege injustice or unfairness that is a result of an abuse of the corporate form." *Nat'l Gear*, 975 F. Supp. 2d at 406. In other words, "the corporation effectively must exist as a sham or shell through which the parent [or other] company perpetrates injustice." *Id.* (citing *Wallace*, 752 A.2d at 1184). A plaintiff, however, "need not prove that the corporation was created with fraud or unfairness in mind;" rather, it "is sufficient to prove that it was so used." *NetJets*, 537 F.3d at 177 (citing Delaware cases).

---

[3] The large majority of instances for which the SAC alleges siphoning of funds from Algoma are to accounts for which the owner has not been identified. There is nothing substantive in the SAC, however, that suggests those accounts were held by Jim or Jay Justice personally.

Algoma's alter-ego allegations, if substantiated, satisfy the requisite element of injustice or unfairness. Algoma asserts that Southern Coal was so that it could not meet its obligations under the Agreements and so that it would be judgment proof. (SAC ¶ 93.) The SAC also sets forth specific factual allegations of instances by which the Justice Parties siphoned off funds from Southern Cal that prevented Southern Cal from fulfilling its obligations. (SAC ¶¶ 95-146.) Unfair siphoning of assets is a well-established example of the injustice or unfairness required under the alter-ego standard. *See NetJets*, 537 F.3d at 183 (factfinder could infer payments to corporation were mischaracterized as loans in order to mask illegal withdrawals, "and could thereby properly find fraud or an unfair siphoning" of assets); *De Sole*, 139 F. Supp. 3d at 669 (a reasonable jury could find an overall element of injustice or unfairness based on evidence that one corporation siphoned millions of dollars from another); *TradeWinds Airlines, Inc. v. Soros*, No. 08 Civ. 5901, 2012 WL 983575, at *7 (sufficient allegation that defendants "siphoned funds from" corporation "and thus improperly left it undercapitalized"). Indeed, siphoning funds is also one of the indicia of a corporate entity that is dominated and controlled by others. *See NetJets*, 537 F.3d at 183 (recognizing overlap in proof of both "unity of ownership" and proof of injustice elements).

Southern Coal argues that Algoma does not sufficiently allege any element of unfairness or injustice because that element cannot be based on the underlying breach of contract action. As a general matter, that proposition is correct: a plaintiff's underlying cause of action alone is not enough to satisfy this element. *NetJets*, 537 F.3d at 183. "To hold otherwise would render the fraud or injustice element meaningless . . . ." *Id.* (quoting *Mobil Oil Corp. v. Linear Films, Inc.,* 718 F. Supp. 260, 268 (D. Del. 1989)). The

case Southern Coal relies on for this proposition is distinguishable, however, because it did not turn on siphoning of funds as the alleged unfairness or injustice. *See A.V.E.L.A.*, 241 F. Supp. 3d at 476.[4] In contrast, allegations of undercapitalization and siphoning, like those asserted by Algoma, were sufficient to proceed in *NetJets*, *De Sole*, and *TradeWinds*.

In sum, the SAC plausibly claims that the corporate entities among the Justice Parties were alter-egos of Southern Coal; it does not, however, plausibly state a claim that Jim Justice or Jay Justice were personal alter-egos of Southern Coal.

**D. Personal Jurisdiction**

Southern Coal offers up another futility argument based not on the alter-ego standard, but rather on lack of personal jurisdiction. Southern Coal argues that the SAC makes no allegations that would establish personal jurisdiction over the Justice Parties. Absent the alter-ego claims, Southern Coal would have a salient point. But, as Algoma notes, if Algoma can establish its alter-ego claims, then the "alter-ego" entities are subject to the Court's personal jurisdiction by way of Southern Coal's being subject to personal jurisdiction here. (Dkt. 53, September 5, 2018 Thomson Hine letter at p.4 n.2) (citing *Cardell Fin. Corp. v. Suchodolski Assocs.*, No. 09 Civ. 6148, 2012 WL 12932049, at *14 (S.D.N.Y. July 17, 2012)). Southern Coal appears to recognize as much by setting forth the proposition that New York courts "will not allow a plaintiff to pierce the corporate veil as a basis for personal jurisdiction over a defendant *unless* there is some evidence that the defendant used the corporate form to harm or defraud a party." (Dkt. 54 at p.3)

---

[4] The *A.V.E.L.A.* court also did not find sufficient allegations of the first alter-ego element and is distinguishable for that reason as well. 241 F. Supp. 3d at 475-76.

10

(quoting and citing New York case law) (emphasis added). Because Southern Coal has set forth sufficient alter-ego claims as explained above, personal jurisdiction is sufficiently alleged.

## II. Delay, Prejudice and Bad Faith

In the Second Circuit, delay alone "absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000) ("we have held repeatedly that 'mere delay' is not, of itself, sufficient to justify denial of a Rule 15(a) motion"). "Where a significant period of time has passed prior to filing a motion to amend, however, the moving party must provide an explanation for the delay." *Agerbrink*, 155 F. Supp. 3d at 452; *Park B. Smith, Inc. v. CHF Indus. Inc.,* 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) (describing burden to explain extended delay and collecting cases).

Algoma has not unduly delayed. Algoma asserts it first learned of facts supporting its alter-ego allegations during the week of March 12, 2018, when it deposed Jay Justice and various company employees. (Dkt. 53 at p.4.) Algoma filed its request to amend on September 5, 2018, nearly six months later.[5]

There is good reason for the passage of that time. On April 25, 2018, Algoma filed the FAC. (Dkt. 39.) The FAC was the result of a previous unopposed motion to amend,

---

[5] Courts have allowed amendment despite similar, and even much longer, intervals between a party's discovery of relevant facts and filing of an amended pleading. *See, e.g., Richardson Greenshields*, 825 F.2d at 653 n.6 (collecting cases where leave to amend granted after delays ranging from two to five years); *Valentini v. Citigroup, Inc.*, No. 11 Civ. 1355, 2013 WL 4407065, at *7 (S.D.N.Y. Aug. 16, 2013) (finding delay of eighteen months insufficient ground to warrant denial of motion to amend where non-moving party "failed to establish bad faith or undue prejudice").

11

which the Court granted on February 16, 2018, to revise the basis for subject matter jurisdiction necessitated by the transfer from bankruptcy court to this court. Although the FAC was filed more than a month after the March depositions, the genesis and purpose of the FAC provides a reasonable explanation as to why the FAC did not include alter-ego allegations.

On May 2, 2018, just a week after filing of the FAC, Southern Coal's initial counsel moved to withdraw. (*See* ECF 40-43.) The litigation did not resume until after Southern Coal retained new counsel on July 5, 2018. (*See* ECF 48-49.) Then, on August 8, 2018, the parties jointly wrote to the Court requesting an extension of discovery. (Dkt. 51.) In that letter, Algoma expressly noted that it "intends to amend its Complaint to add additional parties and alter ego allegations," that Algoma had notified Southern Coal of its intent to do so, that Algoma believed "any extra time necessitated by the Second Amended Complaint has been accounted for in the proposed schedule," and that Algoma planned to "seek Southern Coal's consent" to the SAC before asking the Court for leave to amend. (Dkt. 51 at p.2, n.1.) The Court entered an order with more compressed discovery deadlines than the parties requested, but at the same time extended the deadline to amend pleadings to September 9, 2018. (Dkt. 52.) Less than a month later, and prior to the deadline set by the Court, Algoma filed its request for leave to amend. (Dkt. 53.) The combination of the circumstances leading to the FAC, withdrawal of Southern Coal's counsel, and Algoma's having earlier alerted Southern Coal and the Court to the expected SAC, together provide more than adequate explanation for the passage of several months. This series of events also suggests the absence of any bad faith on Algoma's part, and Southern Coal has offered no indicia of bad faith.

As to prejudice, there is none, other than of course having to defend the new claims. But that is not prejudice relevant to the inquiry; rather, in deciding whether such prejudice exists, courts evaluate whether the amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). "Courts also consider the particular procedural posture of the case." *Agerbrink,* 155 F. Supp. 3d at 454 (citing *Ruotolo v. City of New York,* 514 F.3d 184, 192 (2d Cir. 2008)). "This 'inquiry involves a balancing process,' weighing any potential prejudice to the opposing party against the prejudice that the moving party would experience if the amendment were denied." *Id.* (quoting *Oneida Indian Nation of New York State v. Cty. of Oneida*, 199 F.R.D. 61, 77 (N.D.N.Y. 2000)).

There is no prejudice to Southern Coal from the prospect of having to expand or extend discovery; nor would the amendments cause any significant delay in resolving the dispute. That is so for at least two reasons. First, as noted above, Algoma expressly accounted for any additional discovery in the schedule jointly proposed by the parties. Second, at the hearing on this motion, the Court ordered that any remaining discovery (which included a deposition of Southern Coal) could include discovery regarding the alter-ego claims, but there would be no third-party discovery on the subject or additional discovery beyond what was already planned. In other words, no additional discovery would be permitted other than what could be accomplished within the existing schedule

and discovery requests.  Accordingly, there should be no delay or substantial additional resources required to complete discovery or to prepare for trial.

## Conclusion

For the foregoing reasons, Algoma's motion for leave to file its Second Amended Complaint is DENIED insofar as it seeks to add Jim Justice and Jay Justice as parties, and is GRANTED in all other respects.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: October 29, 2018
  New York, New York

Copies transmitted to all counsel of record.