# THOMPSON HINE

ATLANTA          CLEVELAND          DAYTON          WASHINGTON, D.C.

CINCINNATI          COLUMBUS          NEW YORK

January 29, 2019

*Via ECF and E-mail (Torres_NYSDChambers@nysd.uscourts.gov)*

The Hon. Analisa Torres
U.S. District Judge, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
Courtroom 15D
500 Pearl Street
New York, New York 10007-1312

RE:   *Essar Steel Algoma, Inc. v. Nevada Holdings, Inc. f/ka/ Southern Coal Sales Corporation, et al.*, U.S. District Court, S.D.N.Y., Case No. 17-mc-360

Dear Judge Torres:

We are counsel for plaintiff Essar Steel Algoma, Inc. ("Algoma").  Pursuant to Your Honor's Individual Practices III(A) and (B), we write in response to the January 22 letter filed by the defendants (Dkt. 124) regarding the anticipated motion to dismiss they intend to file on behalf of defendants James C. Justice Companies, Inc.; James C. Justice Companies, LLC; Bluestone Industries, Inc.; Bluestone Coal Corporation; Bluestone Mineral, Inc.; Bluestone Energy Sales Corporation; A&G Coal Corporation; Tams Management Inc.; Encore Leasing LLC; Bluestone Resources Inc.; Justice Family Farms, LLC; and Southern Coal Corporation (collectively, the "Alter Ego Defendants").  Alter Ego Defendants' objections to the Second Amended Complaint ("SAC")—filed by Algoma against the Alter Ego Defendants and the original defendant, Southern Coal Sales Corporation n/k/a Nevada Holdings, Inc. ("SCSC")—lack merit because, as the Magistrate Judge Lehrburger already found, "the SAC plausibly claims that [the Alter Ego Defendants] were alter-egos of [SCSC]." (Dkt. 71, at 10.)

I.     **The Second Amended Complaint sufficiently alleges plausible claims for relief against the Alter Ego Defendants.**

"The legal test for determining when a corporate form should be ignored in equity cannot be reduced to a single formula that is neither over- nor under-inclusive." *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 989 (Del. Ch. 1987).[1]  Although courts must consider

---

[1] The defendants assert that Delaware law applies to the alter-ego issue.  (Dkt. 124, at 1.) Algoma does not concede the issue, but it assumes for purposes of this letter that Delaware law

Kip.Bollin@ThompsonHine.com   216.566.5800   216.566.5786                    4812-3736-0774.1

THOMPSON HINE LLP          3900 Key Center          www.ThompsonHine.com
ATTORNEYS AT LAW           127 Public Square        O: 216.566.5500
                           Cleveland, Ohio  44114-1291   F: 216.566.5800

THOMPSON
HINE

"numerous factors" in determining whether to "treat separate legal entities . . . as alter egos" (*id.*), the Second Circuit has focused the inquiry on two prongs: "(1) whether the entities in question operated as a single economic entity, and (2) whether there was an overall element of injustice or unfairness." *NetJets Aviation, Inc. v. LHC Communs., LLC*, 537 F.3d 168, 177 (2d Cir. 2008).  The SAC sufficiently alleges facts satisfying both prongs.

### A.   The SAC sufficiently alleges that SCSC and the Alter Ego Defendants operated as a single economic entity.

The first prong of the alter-ego analysis focuses on whether those in control of the company treat it as a separate economic entity, considering all the relevant factors, such as adequacy of capitalization and solvency, observation of corporate formalities, and mingling of operations.  *See NetJets*, 537 F.3d at 177.

Here, the Alter Ego Defendants assert that they "operate totally individually" (Dkt. 124, at 2), but the allegations in the SAC (Dkt. 106), which must be taken as true (*see Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007)), demonstrate otherwise.[2]  The SAC alleges that the Alter Ego Defendants had overlapping officers, directors, office locations, and employees. (SAC, ¶¶89, 161-62, 167, 176, 181, 184, 186, 192-93, 196-97, 201, 205-206, 230.)  Employees of SCSC and the Alter Ego Defendants say they worked "for all of the companies" and received paychecks from "Bluestone," which they regarded as the "same thing" as SCSC, and Jay Justice, who owns "the family business," could not remember which entity paid him. (*Id.* at ¶¶83, 158-162.)  The information systems used by SCSC and the Alter Ego Defendants overlapped, as SCSC employees had Bluestone and Justice Corporation email addresses and Bluestone email

---

applies because the result would be the same under New York or Delaware law. *See Mercury Time, Inc. v. Gruen Mktg. Corp.*, No. 97-CV-0020 (JG), 1999 WL 342299, at *44 (E.D.N.Y. May 26, 1999) (regardless of whether New York or Delaware law applied, plaintiff adequately alleged alter ego claim).

[2] Discovery obtained subsequent to filing the SAC has revealed that SCSC's commingling of funds with other companies owned by the Justice family and purposeful undercapitalization of SCSC is even more extensive than Algoma knew when it filed the SAC.  SCSC's revenue was reported as income by Alter Ego Defendants.  For example, SCSC's revenue supposedly is reported on Southern Coal Corporation's tax returns and Bluestone Energy Sales Corporation's tax returns. Further, recently produced records suggest that additional companies owned and controlled by the Justice family may also be alter egos of SCSC and that corporate funds may have been withdrawn from the companies for personal use.  Moreover, because of SCSC's failure to timely and adequately respond to Algoma's discovery requests, discovery on this issue is ongoing.  Algoma is still reviewing documents produced by SCSC and has not yet completed its Rule 30(b)(6) deposition of SCSC.  Algoma is considering moving to amend its complaint again, potentially to add additional parties as alter ego defendants, but for the sake of efficiency will not do so until after SCSC has finally complied with its discovery obligations and discovery has been completed.

THOMPSON
HINE

signatures.  (*Id.* at ¶¶156, 161-162.)  Algoma further alleges that SCSC was undercapitalized because of funds being siphoned to the Alter Ego Defendants. (*Id.* at ¶¶100-147.)  Indeed, despite Algoma paying SCSC more than $54 million in 2016, some entity other than SCSC reported the revenue on its tax return. (*Id.* at ¶93.)  Millions of dollars paid by Algoma to SCSC was immediately transferred to the Alter Ego Defendants. (*Id.* at ¶¶94, 100-147.)  All of this siphoning was done at the behest of Jay Justice, who told Bluestone Industries, Inc.'s treasury department, which also handled SCSC's money, "what they are supposed to do" with the money. (*Id.* ¶92.)  SCSC's undercapitalization resulted in its inability to satisfy its contractual obligations and rendered it judgment-proof. (*Id.* at ¶¶93-99.)

Despite the scores of allegations outlined above, the Alter Ego Defendants assert that Algoma's alter-ego claims reflect "an apparent misunderstanding of how a sales entity generally operates within the coal industry," relying on purported facts that are not even in the record, let alone in the SAC itself, which generally is the only source of information that may be considered on a motion to dismiss. *See Roth*, 489 F.3d at 509.  Moreover, the Alter Ego Defendants' apparent reliance on "industry standards" is completely irrelevant to whether SCSC and the Alter Ego Defendants are treated as a single economic entity.

In short, corporate formalities were not observed.  Funds paid by Algoma to SCSC were siphoned to the Alter Ego Defendants, and funds were commingled; officers, directors, employees, office space, and information systems overlapped; and owners and employees view "the family business" as one single company (SAC, ¶83).  Because those controlling SCSC and the Alter Ego Defendants treat them as one entity, the law treats them the same way. *See NetJets*, 537 F.3d at 177; *Irwin & Leighton*, 532 A.2d at 989 (when corporate "formalities are not respected, the legal fiction of corporateness becomes less 'real' in the everyday experience of those involved in the firm's operations and any expectation that others would treat it as a distinct, liability-limiting entity becomes less reasonable").

### B.    *The SAC sufficiently alleges an overall element of injustice or unfairness.*

It is well-established, as Magistrate Judge Lehrburger noted (Dkt. 71, at 9), that allegations of undercapitalization and siphoning of funds are sufficient to satisfy the "injustice or unfairness" element.  *See NetJets*, 537 F.3d at 183; *McBeth v. Porges*, 171 F. Supp. 3d 216, 234 (S.D.N.Y. 2016); *De Sole v. Knoedler Gallery LLC*, 139 F. Supp. 3d 618, 669 (S.D.N.Y. 2015); *TradeWinds Airlines, Inc. v. Soros*, No. 08 Civ. 5901, 2012 U.S. Dist. LEXIS 39459, at *18-19, 2012 WL 983575 (S.D.N.Y. Mar. 22, 2012); *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 151 (S.D.N.Y. 2012); *Leber Assocs., LLC v. Entm't Group Fund, Inc.*, No. 00 Civ. 3759 (LTS)(MHD), 2003 U.S. Dist. LEXIS 13009, at *45-47, 2003 WL 21750211 (S.D.N.Y. July 29, 2003).  That is precisely what the SAC alleges, as outlined above.

The Alter Ego Defendants do not even mention those cases and instead claim that SCSC is not a "sham" because "SCSC actually delivered coal" under its agreements with Algoma. (Dkt. 124, at 4.)  That assertion ignores the allegations in the SAC demonstrating that Bluestone Resources, Inc. issued invoices to Algoma for coal supposedly delivered by SCSC; an invoice



directed Algoma to make a payment to a bank account in the name of Bluestone Energy Sales Corporation; and Bluestone's address listed on the invoice was the same as SCSC's address. (SAC, ¶167.)  Other invoices were issued by Bluestone Energy Sales Corporation but directed Algoma to remit payment to a bank account in SCSC's name (*id.* at ¶180), making it clear that SCSC and the Alter Ego Defendants are interchangeable.

**II.   Because the Second Amended Complaint alleges a plausible claim for relief against the Alter Ego Defendants, the Court has personal jurisdiction over them.**

Alter-ego entities are a single entity for purposes of personal jurisdiction, which means a defendant's alter egos are subject to personal jurisdiction if the court already has personal jurisdiction over the defendant. *See Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009).  In *Cardell Fin. Corp. v. Suchodolski Assocs.*, for example, the court exercised personal jurisdiction over a defendant because the defendant was the alter ego of a party that had consented to personal jurisdiction in New York by signing a contract with a New York choice-of-law provision.  No. 09 Civ. 6148 (VM) (MHD), 2012 U.S. Dist. LEXIS 188295, at *93-94 (S.D.N.Y. July 17, 2012); *see also Am. Lecithin Co. v. Rebmann*, No. 12-CV-929 (VSB), 2017 U.S. Dist. LEXIS 162037, at *24 (S.D.N.Y. Sep. 30, 2017).

Here, SCSC consented to personal jurisdiction in New York by executing the Coal Supply Agreement, which includes a provision submitting "to the exclusive jurisdiction of the United States District Court for the Southern District of New York" and waiving any right to object to personal jurisdiction.  Thus, because Algoma has adequately pleaded a claim against the Alter Ego Defendants, they are subject to personal jurisdiction the same as SCSC.

**III.   Conclusion**

The SAC sufficiently alleges a plausible claim for relief against the Alter Ego Defendants, and this Court has personal jurisdiction over the Alter Ego Defendants.  A motion to dismiss based on the reasons identified in Alter Ego Defendants' January 22 letter would lack merit and unnecessarily delay and increase the cost of this litigation.

Sincerely yours,

*/s/ Kip T. Bollin*

Kip T. Bollin

cc:      All counsel of record via ECF