


March 21, 2019

*Via ECF and E-mail (Lehrburger_NYSDChambers@nysd.uscourts.gov)*

The Hon. Robert W. Lehrburger
U.S. Magistrate Judge, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1960, Courtroom 18D
New York, New York 10007

**RE: *Essar Steel Algoma, Inc. v. Nevada Holdings, Inc. f/ka/ Southern Coal Sales Corporation, et al.*, U.S. District Court, S.D.N.Y., Case No. 17-mc-360**

Dear Judge Lehrburger:

We are counsel for plaintiff Essar Steel Algoma, Inc. ("Algoma"), and we write in opposition to the March 13 pre-motion letter (Dkt. 132) filed by the defendant Nevada Holdings, Inc. f/k/a Southern Coal Sales Corporation ("SCSC")[1] regarding the anticipated motions it intends to file (1) seeking leave to amend its Answer (Dkt. 125) to assert counterclaims against Algoma, (2) reopening discovery, (3) extending expert report deadlines, and (4) extending the deadline for it to file its motion to dismiss. SCSC should not be permitted to amend its Answer to assert counterclaims because amendment would be futile and further delay this litigation. Moreover, SCSC cannot establish good cause to reopen discovery, and the extension of time it seeks for expert discovery and disclosures is unreasonable. Finally, SCSC has articulated no basis for why an extension of time is necessary to file a motion to dismiss, which has nothing to do with counterclaims, discovery, or experts. The Court should deny SCSC's requests.

## I. SCSC's tardy amendment would be futile and needlessly delay this litigation.

Although Rule 15(a)(2) directs courts to "freely give leave when justice so requires," it does not require a court to "grant leave in the face of reasons to deny it." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend."). For example, leave to amend should be denied if amendment would be futile, unduly prejudice the opposing party, or is the result of undue delay or bad faith. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (affirming denial of motion for leave to amend because "discovery had closed, defendants had filed for summary judgment, and nearly two years had passed since the filing of the original complaint"); *Ruffolo*, 987 F.2d at 131 (holding that because appellant "had already obtained all of the information he requested in

[1] SCSC apparently is not moving on behalf of the other defendants, all of which are related entities owned and operated by the Justice family and, as Algoma alleges, alter egos of SCSC.





nearly two years of discovery with respect to the claims he sought to assert," the trial court did not abuse its discretion by denying leave to amend); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) (holding that where "there is no merit in the proposed amendments, leave to amend should be denied").

Here, the first proposed counterclaim for a $900,000 "offset in damages" is barred by the express terms of the Amending Agreement. SCSC claims that Algoma "breached its obligation to purchase metallurgical coal from SCSC during the 2015 delivery period," but the Amending Agreement, executed in April 2016, extinguished the parties' 2015 obligations: "Any obligation relating to any balance of tons remaining to be delivered on consignment relating to [2015] will be cancelled." Amending Agreement, § A (Dkt. 39-2, attached hereto as Exhibit A). The second and third proposed counterclaims, both of which seek declaratory relief, should not be allowed because declaratory judgment actions are not meant for situations like this where the actions complained of already occurred. *See Morgenthau v. Erlbaum*, 451 N.E.2d 150, 152 (N.Y. 1983) (noting that declaratory judgment actions "only provide[] a declaration of rights between parties that, it is hoped, will forestall later litigation" and must be dismissed "if there is already pending between the parties another action in which all the issues can be determined"). The issues raised by SCSC's proposed counterclaims—whether Algoma properly assessed penalties under the parties' contract and whether SCSC remained obligated to supply coal under the Amending Agreement after the Term Sheet was executed—will be determined by the adjudication of Algoma's second and third claims for relief. Allowing SCSC to assert these "claims" would not promote judicial economy, particularly when the request is accompanied by a request to reopen discovery, which was previously extended multiple times because of SCSC's conduct. This Court should exercise its discretion and deny SCSC's motion to assert counterclaims.

Further, this request comes two years after the case was filed, more than a year after this Court's original deadline for amending pleadings (Dkt. 29), after fact discovery has closed (more than six months after the original fact discovery deadline) (*id.*), and after the deadline for seeking summary judgment has passed. SCSC had all the facts and information necessary to make these claims two years ago, and it cites no new or recently discovered facts that would support its proposed claims. The only purported justification offered for the delay is the "recent analysis done by SCSC's experts in this litigation based on a review of contract documents and related materials." (Dkt. 132, at 1-2.) That is not sufficient reason to grant leave to add counterclaims at this late stage of the proceedings. *See Ansam Associates, Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (affirming denial of leave to amend because "fact discovery had already been completed" and the "sole justification for the belated request to amend" was prior counsel's failure to conduct adequate discovery and substitute counsel's discovery of the basis for a new claim). Unlike Algoma, which amended its complaint to add the alter-ego defendants based on facts learned during discovery, SCSC does not claim that it discovered any new facts that would justify an amendment at this late juncture.





**II. SCSC cannot establish good cause for reopening fact discovery, and Algoma timely disclosed its experts.**

SCSC's proposed counterclaims appear to be an attempt to seek additional "limited discovery" (Dkt. 132, at 2), even though fact discovery, which had been extended several times because of delays caused by SCSC (*e.g.*, Dkt. 87, 97), is closed. SCSC seeks additional discovery, claiming that, "based upon discussions with its consultants, a full and complete production of documents has not been made by [Algoma] with respect to all testing results in the possession, custody or control of [Algoma] or its agents regarding testing of the SCSC coal either at Sandusky, Ohio or at the point of delivery in Canada at [Algoma's] facility." (Dkt. 132, at 3.) It is not entirely clear what SCSC is referring to, but Algoma complied with its discovery obligations. Algoma identified the individuals with knowledge of the facts underlying this dispute, identified the custodians it was searching, identified the search terms it was using to perform those searches, and then performed the searches and produced responsive documents. Algoma discussed this procedure, which took place more than a year ago, with SCSC, and SCSC agreed to it. Only now—after fact discovery closed—does SCSC claim that the process it agreed to and participated in without complaint was insufficient.

SCSC's desire to reopen "discovery with respect to coal supply and testing issues" (Dkt. 132, at 4) also rests on the assertion that Algoma "never raised the issue of either inerts or vitrinite distribution, and this issue is not mentioned in any Essar documents or tabulations produced by it" (Dkt. 132, at 3 fn. 2). That is patently false. Specifications concerning inerts and vitrinites are appended to the original Coal Supply Agreement between the parties, which SCSC never read.[2] Moreover, the word "inert" or "vitrinite" appears in 608 documents produced by Algoma, including third-party lab reports, non-conformance reports, internal petrographic analyses of SCSC coal, and internal discussions concerning the analysis and quality of SCSC coal and whether it could be used in Algoma's cokemaking process. Algoma even produced documents showing that it scheduled a conference call to discuss this issue with SCSC in 2016, but no SCSC employee other than its sales agent showed up for the call. Moreover, Algoma's witnesses testified on this issue. (*E.g.*, Shanker 30(b)(6) Dep. [10-16-18], at 60:19-63:21, excerpt attached hereto as Exhibit C). This issue has been raised repeatedly throughout this case.

SCSC also complains that it did not receive prior notice of "a possible expert report" from Algoma's financial expert, John Stark, "and accordingly SCSC intends to move to strike the Stark alter ego report at the appropriate time." (Dkt. 132, at 4.) But Algoma disclosed Mr. Stark's report on February 27, the deadline set by the Court and agreed to by the parties. (Dkt. 115.) Moreover, even though it had no obligation to do so, Algoma notified SCSC's counsel on November 30, 2018, that it expected to offer an expert report analyzing "financial-related information." (Bollin Email [11-30-18], attached hereto as Exhibit D.)[3]

---

[2] Jay Justice Dep., at 98: 20-21 ("I haven't read this agreement."), excerpt attached hereto as Exhibit B.

[3] Contrary to SCSC's assertion, it is not a "surprise" that Algoma alleges alter-ego liability or that Algoma is offering expert evidence related to its alter-ego claims, as the issue has been a subject of recent discovery both in this case and in others where





Nonetheless, although Algoma complied with its discovery and expert-disclosure obligations, it would consent to a reasonable extension of time for SCSC's expert to prepare a rebuttal to Mr. Stark's report, and is willing to negotiate limited paper and deposition discovery with respect to Shawn Galey, the Algoma employee identified as an expert witness.

**IV. No extension of the motion-to-dismiss deadline is warranted.**

SCSC cites no facts or reason for why an extension of the deadline to file a motion to dismiss is warranted. Neither the addition of counterclaims nor the extension of discovery and expert deadlines has anything to do with whether the allegations in the Second Amended Complaint are sufficient to state a plausible claim for relief, which is the only issue to be determined on SCSC's motion to dismiss. Moreover, the issues to be raised in the motion to dismiss are virtually identical to the issues already raised in SCSC's objections (Dkt. 82) to Magistrate Judge Lehrburger's decision granting Algoma's motion for leave to amend its complaint to add alter-ego defendants (Dkt. 71) and the pre-motion letter filed by SCSC seeking leave to file its motion to dismiss (Dkt. 124). An extension of the motion-to-dismiss deadline would only further delay this case.

Respectfully yours,

*/s/ Kip T. Bollin*

Kip T. Bollin

cc: All counsel of record via ECF

---

the Justice-related entities are faced with the same issues. *See, e.g., Pinnacle Bank v. Bluestone Energy Sales Corp.*, No. 7:17CV00395, 2018 WL 6440887 (W.D. Va. Dec. 7, 2018) (several entities owned by the Justice family, including defendants in this case—Bluestone Energy Sales Corporation, A&G Coal Corporation, and Tams Management, Inc.—"linked together" their accounts "through a 'sweep' or 'zero balance' arrangement, which enabled funds to be easily transferred from one account to another," and funds were transferred among the accounts daily); *Treadway v. Bluestone Coal Corp.*, No. 5:16-cv-12149, 2018 WL 1158256 (S.D. W.Va. Mar. 5, 2018) (finding that defendants in this case—Bluestone Industries, Bluestone Coal Corporation, and Mechel Bluestone—were "a single employer" by their own admission); *Pinnacle Mining Co., LLC v. Bluestone Coal Corp.*, No. 5:08-cv-00931, 2015 U.S. Dist. LEXIS 129848 (S.D. W. Va. Sep. 28, 2015) (defendant in this case, Bluestone Industries, admitted that there were questions of fact as to whether it is an alter ego of its subsidiaries); *State ex rel. Bluestone Coal Corp. v. Mazzone*, 697 S.E.2d 740 (W.Va. 2010) (holding that, because of the "unique corporate structure enjoyed by the Bluestone companies," Jim (now Governor) Justice "remain[ed] ultimately responsible for any debts and/or liabilities the Bluestone companies may owe . . . as a result of this litigation").