**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ESSAR STEEL ALGOMA INC., )<br>)<br>    Plaintiff, )<br>)<br>vs. )<br>)<br>NEVADA HOLDINGS, INC., f/k/a )<br>SOUTHERN COAL SALES )<br>CORPORATION, *et al.*, )<br>)<br>    Defendants. )<br>) | Case No. 1:17-mc-00360-AT<br><br>Judge Analisa Torres<br><br>Magistrate Judge Robert W. Lehrburger |

---

**ESSAR STEEL ALGOMA INC.'S OPPOSITION TO NEVADA HOLDINGS, INC., f/k/a SOUTHERN COAL SALES CORPORATION'S MOTION FOR LEAVE TO FILE AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

I. Introduction................................................................................................................. 1

II. Southern Coal's Proposed Amendments Would Be Futile Because the Proposed Counterclaims Lack Merit. ......................................................................................... 2

    A.    Breach of Contract................................................................................................ 2

        1. The Amending Agreement Bars Claims Based on the 2015 Delivery Period. ........... 2

        2. A Counterclaim Based on the 2016 Delivery Period Is Improper. ............................ 4

    B.    Breach of Implied Covenant of Good Faith and Fair Dealing ................................... 5

    C.    Declaratory Judgment........................................................................................... 7

III. Southern Coal Unduly Delayed in Proposing its Amendments........................................ 8

IV. Southern Coal's Proposed Amendments Would Prejudice Algoma................................... 9

V. Conclusion ................................................................................................................ 10

# TABLE OF AUTHORITIES

<u>Cases</u> <u>Page</u>

*Apple Records, Inc. v. Capitol Records, Inc.*, 137 A.D.2d 50 (1st Dep't 1988)..............................7

*Chambers v. Time Warner, Inc.*, 282 F. 3d 147 (2d Cir. 2002)....................................................3, 4

*Deer Park Enters., LLC v. Ali Sys., Inc.*, 57 A.D. 3d 711 (1st Dep't 2008) ....................................6

*Dunham v. City of New York*, 295 F. Supp. 3d 319 (S.D.N.Y. 2018) .............................................3

*Furman v. Cirrito*, 828 F.2d 898 (2d Cir. 1987) ............................................................................3

*Hawthorne Group v. RRE Ventures*, 7 A.D.3d 3203 (1st Dep't 2004)...........................................6

*Health-Chem Corp. v. Baker,* 915 F.2d 805 (2d Cir. 1990) ............................................................1

*MBIA Ins. Corp. v. Lynch*, 81 A.D.3d 419 (1st Dep't 2011) ..........................................................6

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) .............................................1

*Morgenthau v. Erlbaum,* 451 N.E.2d 150 (N.Y. 1983) ...................................................................7

*Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129 (2d Cir. 1993) .........................................................1

*Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, 215 F.R.D. 105 (S.D.N.Y. 2003) .................9

*Spinelli v. NFL*, 96 F. Supp. 3d 81 (S.D.N.Y. 2015) ......................................................................3

*Touro Coll. v. Novus Univ. Corp.*, 146 A.D.3d 6799 (1st Dep't 2017)...........................................7

<u>Federal Rules</u>

Rule 15(a)(2)......................................................................................................................................1

I. **Introduction**

Plaintiff Essar Steel Algoma Inc. ("Algoma") hereby files this Memorandum in Support of its Opposition to Defendant Nevada Holdings, Inc., f/k/a Southern Coal Sales Corporation's ("Southern Coal") Motion for Leave to File Amended Answer, Affirmative Defenses, and Counterclaim (the "Motion"). Southern Coal should not be permitted to amend its Answer to assert counterclaims more than a year after the deadline to do so has passed because the amendment would be futile, some of the proposed counterclaims were not disclosed in the Defendant's letter brief to the Court, and the counterclaims appear to be merely a tactic for delay that would require extensive additional discovery and significantly postpone resolution of this matter.

Although Rule 15(a)(2) directs courts to "freely give leave when justice so requires," courts retain discretion and are not required to "grant leave in the face of reasons to deny it." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend."). For example, leave to amend should be denied if amendment would be futile, unduly prejudice the opposing party, or is the result of undue delay or bad faith. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (affirming denial of motion for leave to amend because "discovery had closed, defendants had filed for summary judgment, and nearly two years had passed since the filing of the original complaint"); *Ruffolo*, 987 F.2d at 131 (holding that because appellant "had already obtained all of the information he requested in nearly two years of discovery with respect to the claims he sought to assert," the trial court did not abuse its discretion by denying leave to amend); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) (holding that where "there is no merit in the proposed amendments, leave to amend should be denied").

1

Here, two years after the case was filed, more than a year after this Court's original deadline for amending pleadings (dkt. 29), after fact discovery has closed (and more than six months after the original fact discovery deadline has passed) (*id.*; dkt. 115, at 2), and after the deadline for seeking summary judgment has expired (dkt. 29, at 2; dkt 115, at 2), Southern Coal seeks leave to assert four counterclaims that arise out of the same transactions or occurrences that are the subject matter of Algoma's claims: (1) an unspecified amount of damages arising from Algoma's purported breach of an "obligation to purchase metallurgical coal from SCSC during the 2015 and 2016 delivery period"; (2) an unspecified amount of damages arising from Algoma's purported breach of the implied covenants of good faith and fair dealing; (3) a declaratory judgment that Algoma violated the Coal Supply Agreement, Amending Agreement, and Term Sheet by assessing penalties based on Algoma's test results; and (4) a declaratory judgment that Southern Coal's performance was limited to the terms set forth in the Term Sheet. (Dkt. 132, at 1–2.) This Court should deny leave to amend because each of the proposed counterclaims is futile, some counterclaims were not previously disclosed in letter briefs as required, Southern Coal unjustifiably delayed in asserting the counterclaims, and allowing amendment at this late stage would unduly prejudice Algoma.

II. **Southern Coal's Proposed Amendments Would Be Futile Because the Proposed Counterclaims Lack Merit.**

   A. *Breach of Contract*

      1. **The Amending Agreement Bars Claims Based on the 2015 Delivery Period.**

Southern Coal's breach-of-contract claim is based largely on conduct that occurred in 2015. But the Amending Agreement, executed in April 2016, extinguished the parties' 2015 obligations: "Any obligation relating to any balance of tons remaining to be delivered on consignment relating to the First Contract Year [ending March 31, 2016] will be cancelled."

2

Amending Agreement, § A (Dkt. 39-2). Thus, Southern Coal expressly released and waived its rights to recover any damages with respect to coal deliveries arising from the 2015 Agreement's First Contract Year.

To avoid this conclusion, Southern Coal urges the Court to rely on *Dunham v. City of New York*, which stands for the general proposition that the allegations in a proposed pleading are assumed to be true in assessing futility. 295 F. Supp. 3d 319, 326 (S.D.N.Y. 2018). That general proposition is well-established, but it does not mean that a court must accept factual allegations in a pleading as true that are directly contradicted by the terms of a written contract upon which the claims in a pleading are based. *Spinelli v. NFL*, 96 F. Supp. 3d 81, 131–32 (S.D.N.Y. 2015) (dismissing breach-of-contract claim where the Complaint's allegations contradicted the "plain language" of the contract). Southern Coal's argument ignores the express waiver in the Amending Agreement.

Indeed, *Dunham* recognizes that courts may consider documents attached to, incorporated in, or relied "heavily upon" by a pleading. *Id.* at 327. The reason that courts generally may not consider documents outside the pleadings at the motion-to-dismiss phase is "the lack of notice" to the other party "that the material may be considered," but the notice concern is "dissipated" where, as here, the moving party has actual notice of the information and has relied upon it in framing its pleading. *Chambers v. Time Warner, Inc.*, 282 F. 3d 147, 153 (2d Cir. 2002); *Furman v. Cirrito*, 828 F.2d 898, 900 (2d Cir. 1987) (affirming dismissal of claim by relying on partnership agreement and sales contract that were "integral" to the claim).

Southern Coal obviously was aware of the Amending Agreement and the parties' other contracts. It dedicates a section in its proposed counterclaim specifically to "The 2016 Amending Agreement, Term Sheet, And Deliveries," and specifically bases its breach-of-

3

contract claim on Algoma's alleged "breaches of the parties' *agreements*." (Dkt. 142-2, at 3–6 (emphasis added).) The Court may therefore consider the Amending Agreement, including the waiver provision, when analyzing whether Southern Coal's proposed claims would be futile. *Chambers*, 282 F.3d at 153. Since the Amending Agreement explicitly cancels any obligations relating to the 2015 delivery period, Southern Coal's breach-of-contract claim based on 2015 obligations would be futile. Leave to assert such a claim should be denied.

### 2. A Counterclaim Based on the 2016 Delivery Period Is Improper.

In its proposed breach-of-contract counterclaim, Southern Coal added additional allegations relating to 2016 conduct that were not set forth in its Letter Motion seeking leave to amend. (Dkt. 132.) Section D of Judge Lehrburger's Individual Practices requires letter motions to "summarize the basis of the motion." Section 3.A.ii. of Judge Torres's Individual Practices likewise requires letter motions to "set[] forth the basis for the anticipated motion."

Southern Coal's proposed counterclaim for breach of conduct based on the 2016 delivery period was not set forth in its Letter Motion. In the proposed counterclaim now attached to Southern Coal's Motion for Leave to Amend, Southern Coal, without explanation, tacked on the phrase "and 2016" to expand the time period in which Algoma allegedly breached its "obligations":

> When Algoma Canada **breached its obligations to purchase metallurgical coal from SCSC during the 2015 and 2016** delivery periods and instead purchased coal from third-party producers at lower prices than the contract prices for coal under the contractual arrangement with SCSC, or simply did not purchase coal at all, SCSC suffered damages in in [sic] excess of the jurisdiction limits of this Court, representing the savings received by Algoma Canada. This amount has only recently been determined by an analysis done by SCSC's experts in this litigation based on a review of contract documents and related materials.

4

(Dkt. 142-2, at 6) (emphasis added). The proposed counterclaim as described in Southern Coal's Letter Motion, however, was limited to the 2015 delivery period:

> SCSC intends to file motions seeking the following relief. . .Leave to assert a Counterclaim against Essar for an offset in damages in the range of approximately $900,000 representing the savings received by Essar when it ***breached its obligation to purchase metallurgical coal from SCSC during the 2015 delivery period*** and instead purchased coal from third party producers at lower prices than the contract prices for coal under the contractual arrangement with SCSC. This amount has been determined by a recent analysis done by SCSC's experts in this litigation based on a review of contract documents and related materials.

(dkt. 132, at 1) (emphasis added). The alleged 2016 "breaches" were not discussed during the Court's March 27, 2019 telephone conference on Southern Coal's Letter Motion. This issue is therefore not properly before the Court and should be denied.

In any event, the basis for Southern Coal's purported claim for the 2016 delivery period appears to be that Algoma purchased coal from other suppliers in 2016. Southern Coal again wants to ignore the plain, unambiguous terms of the Amending Agreement, which expressly provides that Algoma "has the right to purchase and use additional High Volatile Coal from other sources." Amending Agreement, § A (Dkt. 39-2). The express terms of the parties' agreements directly contradict Southern Coal's allegations. Moreover, any argument related to Algoma's alleged conduct in 2016 is merely a purported defense to Algoma's breach-of-contract claim against Southern Coal, not an affirmative, standalone claim against Algoma. These allegations do not establish that Algoma breached any of the parties' agreements. This Court should therefore deny Southern Coal leave to assert a counterclaim for breach of contract.

      **B.**    ***Breach of Implied Covenant of Good Faith and Fair Dealing***

Again, the proposed counterclaims remain a moving target. Southern Coal did not seek leave to pursue its second proposed counterclaim for breach of the implied covenant of good

5

faith and fair dealing in its Letter Motion (dkt. 132), and this counterclaim was not discussed during the Court's March 27, 2019 telephone conference on Southern Coal's Letter Motion. Consequently, leave to assert this counterclaim should be denied.

This proposed counterclaim also fails on its face because it is based on the same alleged conduct as Southern Coal's proposed breach-of-contract counterclaim (which is itself futile) and is tied to the same alleged damages. A party cannot state a claim for breach of the implied covenant of good faith and fair dealing if the conduct and injury underlying the claim are identical to those alleged in the party's claim for breach of contract. *MBIA Ins. Corp. v. Lynch*, 81 A.D.3d 419, 420 (1st Dep't 2011) (affirming dismissal of claim for breach of the implied covenant because it was "premised on the same conduct that underlies the breach of contract cause of action and is 'intrinsically tied to the damages allegedly resulting from a breach of the contract'") (quoting *Hawthorne Group v. RRE Ventures*, 7 A.D.3d 320, 323 (1st Dep't 2004)); *Deer Park Enters., LLC v. Ali Sys., Inc.*, 57 A.D. 3d 711 (1st Dep't 2008) (affirming dismissal of claim for breach of the implied covenant where claim was duplicative of breach-of-contract claim).

Here, Southern Coal explicitly bases its claim for breach of the implied covenant of good faith and fair dealing on Algoma's alleged "actions and inactions described above" (dkt. 142-2, at 7), *i.e.* the same conduct allegedly supporting its claim for breach of contract, and which conduct (if proved) is at best a defense to Algoma's actions already before the Court.[1] Accordingly, this Court should deny leave to assert a counterclaim for breach of the implied

---

[1] Southern Coal also claims that it suffered damages "in an amount to be determined at trial" without any further specificity as to how its damages for breach of the implied covenant of good faith and fair dealing would differ from its breach-of-contract damages.

covenant of good faith and fair dealing because it is duplicative of the proposed breach-of-contract claim.

  **C.**   ***Declaratory Judgment***

The purpose of declaratory judgments is to "serve some practical end in quieting or stabilizing an uncertain or disputed jural relation either as to **present** or **prospective** obligations." *Touro Coll. v. Novus Univ. Corp.*, 146 A.D.3d 679, 679 (1st Dep't 2017) (emphasis added). Courts must dismiss declaratory judgment actions "if there is already pending between the parties another action in which all the issues can be determined." *Morgenthau v. Erlbaum,* 451 N.E.2d 150, 152 (N.Y. 1983); *Apple Records, Inc. v. Capitol Records, Inc.*, 137 A.D.2d 50, 54 (1st Dep't 1988) ("A cause of action for a declaratory judgment is unnecessary and inappropriate when the plaintiff has an adequate, alternative remedy in another form of action, such as breach of contract").

Southern Coal's third and fourth proposed counterclaims, both of which seek declaratory relief, should not be allowed because declaratory judgment actions are not proper where the conduct that serves as the basis for the claim already occurred and there are no further dealings between the parties. *See Morgenthau,* 451 N.E.2d at 152 (noting that declaratory judgment "only provides a declaration of rights between parties that, it is hoped, will forestall later litigation"). Although Southern Coal's proposed counterclaims would be brought in the same action as Algoma's claims, Southern Coal wants to raise issues that are already pending in this lawsuit — specifically, whether: (1) Algoma properly assessed penalties under the parties' contract (Algoma's Third Claim for Relief in the Second Amended Complaint); and (2) Southern Coal remained obligated to supply coal under the Amending Agreement after the parties executed the Term Sheet (Algoma's Second Claim for Relief in the Second Amended Complaint). Indeed, Southern Coal admits that these claims "relate to the same agreements upon which Algoma

7

initiated this litigation, involve the same parties, and concern mostly the same conduct." (Dkt. 142-1, at 2.) These declaratory judgment "claims," which are really just defenses, will necessarily be determined by this Court in deciding Algoma's claims, and they appear to be little more than an attempt to manufacture a reason to re-open discovery and further delay this litigation. The Court should exercise its discretion and deny Southern Coal's motion for leave to amend to add declaratory judgment counterclaims.

**III.    Southern Coal Unduly Delayed in Proposing its Amendments.**

Leave also should be denied because all of Southern Coal's proposed counterclaims could have been brought long ago. Southern Coal's Motion offers no explanation for why these counterclaims were not asserted two years ago, in May of 2017, when Southern Coal filed its Answer to the Complaint. The only potential explanation comes in relation to the first claim for breach of contract, which purportedly is based on a recent "analysis done by Southern Coal's experts in this litigation based on a review of contract documents and related materials." (Dkt. 142, at 6.) No details of this "analysis" are provided in Southern Coal's Motion, and the "contract documents and related materials" reviewed by Southern Coal's "experts" are not attached to the Motion. While Southern Coal may have only recently come up with this theory, it had all the facts and information necessary to make this claim years ago, as Southern Coal certainly had the "contract documents" upon which this claim is based before the litigation even began.

At this late stage, Southern Coal should not be permitted to assert counterclaims it could have and should have brought at the outset of the case. Unlike Algoma, which amended its complaint to add the alter-ego defendants based on facts learned during discovery, Southern Coal does not claim that it discovered any new facts that would justify an amendment at this late juncture. The fact that Southern Coal has new counsel that has crafted a new theory now, more

than two years after Southern Coal's answer was filed, cannot serve as the basis to seek leave. The Court should deny Southern Coal leave to assert all of its counterclaims on this basis alone.

## IV.   Southern Coal's Proposed Amendments Would Prejudice Algoma.

Southern Coal should be denied leave to assert its proposed counterclaims for the independent reason that such amendments would unduly prejudice Algoma. To evaluate prejudice in this context, the Second Circuit considers whether the amendment would (1) require additional discovery and trial preparation, (2) significantly delay the case's resolution, or (3) prevent the opposing party from filing a timely action in a different forum. *Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, 215 F.R.D. 105, 107 (S.D.N.Y. 2003).

In *Silva*, this Court found that the plaintiff would not suffer prejudice from the defendant's proposed amendment where the plaintiff had not yet taken any depositions of the defendant's employees, all of the documents related to the proposed amendment would be captured by existing discovery requests, and two witnesses had already been deposed about the subject matter underlying the proposed amendment. *Id.*

Here, unlike *Silva*, the parties have already concluded extensive fact discovery (including the production of tens of thousands of pages of documents and more than a dozen depositions) and exchanged expert witness reports. The fact discovery period has been extended numerous times and has long been closed. (Dkt. 29, 52, 66, 97, 115.) Southern Coal's proposed counterclaims, however, would require significant additional discovery. Three out of four of the proposed counterclaims would be based on conduct that occurred in 2015 and arise out of the parties' performance of the 2015 Agreement — an agreement and time period that are not the subject of any currently pending claims. Given the scope of the claims at the start of discovery, the parties expressly agreed not to pursue fact discovery related to pre-2016 conduct and limited their document collection to those documents dated after January 1, 2016. Re-opening discovery

9

to collect documents and depose witnesses regarding an entire year of a business relationship not previously investigated in the drawn-out fact discovery period would result in significant additional expense and delay the resolution of this matter.  It would also be pointless because Southern Coal expressly waived any claims relating to 2015 obligations.

While Southern Coal asserts that Algoma will not suffer prejudice because no trial date is yet set and "Algoma will be given a full opportunity to respond to the new claims," Southern Coal fails to acknowledge the amount of time and expense that this "opportunity" will cost. (Dkt. 142-1, at 4.)  Indeed, Southern Coal does not represent anywhere in its Motion that it could pursue these claims with the discovery it already has, nor does it represent that additional time will not have to be added to the already repeatedly amended and drawn out case schedule.  (*Id.*)  The Court should therefore deny Southern Coal leave to assert its proposed counterclaims.

### V.   Conclusion

This case was filed in March of 2017, and has suffered delays due to two changes of defense counsel, including a three-month delay in 2018.  Algoma asks the Court to exercise its discretion to deny Southern Coal's Motion for leave to assert its futile, unapologetically late, and unduly prejudicial proposed counterclaims.

Date:   June 3, 2019

Respectfully submitted,

THOMPSON HINE LLP

*/s/   Kip T. Bollin*
Kip T. Bollin (*admitted pro hac vice*)
Laura L. Watson (*admitted pro hac vice*)
Mark R. Butscha, Jr.
Melissa A. Barrett (*admitted pro hac vice*)
3900 Key Center, 127 Public Square
Cleveland, OH 44114
Tel: (216) 566-5500
Fax: (216) 566-5800
kip.bollin@thompsonhine.com

10

>laura.watson@thompsonhine.com
>mark.butscha@thompsonhine.com
>melissa.barrett@thompsonhine.com
>
>-and-
>
>Rebecca Brazzano
>335 Madison Ave., 12th Floor
>New York, NY 10017-4611
>Tel:  (212) 344-5680
>Fax:  (212) 344-6101
>Rebecca.Brazzano@thompsonhine.com
>
>*Attorneys for Plaintiff Essar Steel Algoma Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2019, I caused the foregoing to be served the on all counsel of record, electronically via the Court's electronic filing system.

*/s/ Kip. T. Bollin*
*Attorney for Essar Steel Algoma, Inc.*