**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ESSAR STEEL ALGOMA INC., ) | ) |
| ) | Case No. 1:17-mc-00360-AT |
| Plaintiff, ) | ) |
| ) | Judge Analisa Torres |
| vs. ) | ) |
| ) | Magistrate Judge Robert W. |
| NEVADA HOLDINGS, INC., f/k/a ) | Lehrburger |
| SOUTHERN COAL SALES ) | |
| CORPORATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

_____

**ESSAR STEEL ALGOMA INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AS TO THE NEW DEFENDANTS**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

I. The Alter Ego Defendants Improperly Apply a Heightened Pleading Standard and Extrinsic Evidence. .................................................................................................. 1

    A. The Alter Ego Defendants Misconstrue the Motion to Dismiss Standard. ................. 1

    B. The Alter Ego Defendants Rely on Extrinsic Evidence that Cannot Be Considered on a Motion to Dismiss. ................................................................................. 2

II. The Second Amended Complaint Sufficiently Alleges Plausible Claims for Relief against the Alter Ego Defendants. ............................................................................................. 5

    A. The SAC Sufficiently Alleges that SCSC and the Alter Ego Defendants Operated as a Single Economic Entity. ....................................................................................... 5

    B. The SAC Sufficiently Alleges an Overall Element of Injustice or Unfairness. .......... 8

III. Because the Second Amended Complaint Alleges a Plausible Claim for Relief Against the Alter Ego Defendants, the Court Has Personal Jurisdiction Over Them. ..................... 9

IV. The Alter Ego Defendants' Judicial Admissions Demonstrate that They Are Alter Egos as a Matter of Law. ........................................................................................................ 10

    A. The Alter Ego Defendants Admit They Operate as a Single Economic Entity. ....... 10

    B. The Alter Ego Defendants Admit Injustice and Unfairness in Their Dealings with Algoma. ............................................................................................................. 11

V. Conclusion ............................................................................................................... 13

# **TABLE OF AUTHORITIES**

Page

**Cases**

*Am. Lecithin Co. v. Rebmann*, No. 12-CV-929 (VSB), 2017 U.S. Dist. LEXIS 162037 (S.D.N.Y. Sep. 30, 2017) .................................................................................................................. 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................... 1

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 1

*Cardell Fin. Corp. v. Suchodolski Assocs.*, No. 09 Civ. 6148 (VM) (MHD), 2012 U.S. Dist. LEXIS 188295 (S.D.N.Y. July 17, 2012) ................................................................................ 9

*Cohen v. Schroeder*, 248 F. Supp.3d 511 (S.D.N.Y. 2017) ........................................................... 8

*De Sole v. Knoedler Gallery LLC*, 139 F. Supp. 3d 618 (S.D.N.Y. 2015) .................................... 8

*Doubleline Capital LP v. Odebrecht Fin., Ltd.*, 323 F. Supp.3d 393 (S.D.N.Y. 2018) ................. 3

*Fletcher v. Atex, Inc.*, 68 F.3d 1415 (2d Cir. 1995) ...................................................................... 2

*Gevvs Healthcare Solutions, Inc. v. Orion Healthcorp, Inc.*, No. 1:16-cv-2206-GHW, 2017 U.S. Dist. LEXIS 51422 (S.D.N.Y. Apr. 4, 2017) ........................................................................... 2

*Goel v. Bunge, Ltd.*, 820 F.3d 554 (2d Cir. 2016) ................................................................... 2, 3

*Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983 (Del. Ch. 1987) ......................... 5, 7

*Leber Assocs., LLC v. Entm't Group Fund, Inc.*, No. 00 Civ. 3759 (LTS)(MHD), 2003 U.S. Dist. LEXIS 13009, 2003 WL 21750211 (S.D.N.Y. July 29, 2003) ............................................... 8

*Lilakos v. New York City*, No. 14 CV 5288 (PKC)(LB), 2017 U.S. Dist. LEXIS 177851 (E.D.N.Y. Oct. 25, 2017) ....................................................................................................... 3

*McBeth v. Porges*, 171 F. Supp. 3d 216, 234 (S.D.N.Y. 2016) .................................................... 8

*Mercury Time, Inc. v. Gruen Mktg. Corp.*, No. 97-CV-0020 (JG), 1999 WL 342299 (E.D.N.Y. May 26, 1999) ........................................................................................................................ 5

*Nelson v. Int'l Paint Co.*, 734 F.2d 1084 (5th Cir. 1984) .............................................................. 2

*NetJets Aviation, Inc. v. LHC Communs., LLC*, 537 F.3d 168 (2d Cir. 2008) ................. 5, 7, 8, 10

*Orange County Water Dist. v. Unocal Corp. In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 67 F. Supp.3d 619 (S.D.N.Y. 2014) ............................................................... 13

*Purgess v. Sharrock*, 33 F.3d 134 (2d Cir. 1994) .......................................................................... 10

*Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142 (S.D.N.Y. 2012) ......................... 8

*TradeWinds Airlines, Inc. v. Soros*, No. 08 Civ. 5901, 2012 U.S. Dist. LEXIS 39459, 2012 WL 983575 (S.D.N.Y. Mar. 22, 2012) ..................................................................................... 8

*Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221 (2d Cir. 2009) ............................. 9

Plaintiff Essar Steel Algoma Inc. ("Algoma") hereby files its Opposition to Defendants' Motion to Dismiss the Second Amended Complaint ("SAC") as to the New Defendants: James C. Justice Companies, Inc.; James C. Justice Companies, LLC; Bluestone Industries, Inc.; Bluestone Coal Corporation; Bluestone Mineral, Inc.; Bluestone Energy Sales Corporation; A&G Coal Corporation; Tams Management Inc.; Encore Leasing LLC; Bluestone Resources Inc.; Justice Family Farms, LLC; and Southern Coal Corporation (collectively, the "Alter Ego Defendants").  The Motion to Dismiss (the "Motion") lacks merit because, as Magistrate Judge Lehrburger already found, "the SAC plausibly claims that [the Alter Ego Defendants] were alter-egos of [Defendant Southern Coal Sales Corporation n/k/a Nevada Holdings, Inc. ("SCSC")]." (Dkt. 71, at 10.)  Further, the Motion applies the incorrect legal standard for the Court's review of a motion to dismiss, it improperly relies on extrinsic evidence, and it proffers unsupported legal conclusions, such as its newly minted defense that companies cannot be alter egos if it is typical for other companies in the industry to treat related entities in the same manner.  Finally, the Motion makes over a dozen judicial admissions that actually support Algoma's alter ego allegations, perhaps definitively.  For these reasons, the Motion to Dismiss should be denied.

**I.     The Alter Ego Defendants Improperly Apply a Heightened Pleading Standard and Extrinsic Evidence.**

   **A.     *The Alter Ego Defendants Misconstrue the Motion to Dismiss Standard.***

To survive a motion to dismiss, a complaint need only set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  As opposed to a motion for summary judgment that tests a complaint's "substantive merits," a motion to dismiss challenges only the complaint's

1

"legal feasibility." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016).  A motion to dismiss "is not the proper vehicle for [a party] to tell its side of [the] story." *Gevvs Healthcare Solutions, Inc. v. Orion Healthcorp, Inc.*, No. 1:16-cv-2206-GHW, 2017 U.S. Dist. LEXIS 51422, at *12 (S.D.N.Y. Apr. 4, 2017).

Despite this well-settled standard, the Alter Ego Defendants attempt to impose higher requirements on Algoma, as though this were a summary judgment motion.  They imply that Algoma needs to do more than simply allege enough facts to state a plausible claim, and actually must prove its claims in the SAC.  For example, they argue that "Algoma offers no proof. . ." (Dkt. 145-1, at 7[1]), that "Algoma has presented no evidence. . ." (*id.* at 8), that "Algoma has failed to show sufficient evidence. . ." (*id.* at 14–15), and that despite Algoma's allegations, "[t]he evidence shows" otherwise (*id.* at 15).  The Alter Ego Defendants even rely on summary judgment cases to argue that the SAC should be dismissed for "lack of sufficient evidence." (*Id.* at 14, citing *Fletcher v. Atex, Inc.*, 68 F.3d 1415 (2d Cir. 1995) and *Nelson v. Int'l Paint Co.*, 734 F.2d 1084, 1092 (5th Cir. 1984) for the proposition that a defendant may be entitled to summary judgment for lack of sufficient evidence.)  While the Alter Ego Defendants are wrong on all counts – the evidence supporting alter ego liability is voluminous – for purposes of this motion, evidence is entirely irrelevant; Algoma need only allege a plausible claim, not prove it.

      **B.**    ***The Alter Ego Defendants Rely on Extrinsic Evidence that Cannot Be Considered on a Motion to Dismiss.***

The Court should also disregard the Alter Ego Defendants' myriad of citations to extrinsic evidence.  Courts generally may not "consider material extrinsic to the complaint in evaluating a motion to dismiss" unless such material is "integral" to the complaint.  *Doubleline*

---

[1] The citations to docket 145-1 are to the pages as numbered on the bottom of each page, which are inconsistent with the page numbers on the ECF time stamp on the top of each page.

2

*Capital LP v. Odebrecht Fin., Ltd.*, 323 F. Supp.3d 393, 457 (S.D.N.Y. 2018) (refusing to consider deposition testimony cited in motion to dismiss because the testimony was not integral to the second amended complaint); *Lilakos v. New York City*, No. 14 CV 5288 (PKC)(LB), 2017 U.S. Dist. LEXIS 177851, at *3, n.5 (E.D.N.Y. Oct. 25, 2017) (declining to consider deposition transcripts when deciding motion to dismiss); *Goel*, 820 F.3d at 559 (same). A document is "integral" to a complaint only if the complaint "relies heavily upon its terms and effect." *Goel*, 820 F.3d at 559. This exception is usually recognized in the context of a contract or other legal document that contains "obligations upon which the plaintiff's complaint stands or falls" but that is not attached to the complaint. *Goel*, 820 F.3d at 559.

The Court should disregard the vast majority of the Alter Ego Defendants' Motion to Dismiss on this basis alone – because it relies on extrinsic evidence not integral to (and largely irrelevant to) the SAC. While the Alter Ego Defendants spend seven pages summarizing the report of their expert witness Aaron Heighton (dkt 145-1 at 15–22), there is no conceivable argument that Mr. Heighton's report was integral to the SAC. Indeed, it would be impossible for the Heighton Report to be "integral" to the SAC, because it was not created until May 2019, five months after Algoma filed the SAC. The Court cannot consider the references to Mr. Heighton's report and can therefore disregard pages 15 through 22 of the Motion to Dismiss.

The rest of the Alter Ego Defendants' motion is replete with citations to deposition testimony that the Court also cannot consider on a motion to dismiss. For example, the Alter Ego Defendants cite to the 2019 deposition of Stephen Ball (*see, e.g.,* dkt 145-1 at 9, 12), but this deposition could not possibly be integral to the SAC because, like the Heighton Report, it did not take place until two months after the SAC was filed. Nor is the 2018 deposition of Stephen Ball integral to the SAC – the SAC does not once mention Mr. Ball's testimony. While the SAC

3

occasionally references Jay Justice's testimony, it does not rely heavily on the "terms and effect" of Mr. Justice's deposition as a complaint might rely on an underlying contract, and the deposition is not integral to the SAC.

Moreover, the Alter Ego Defendants cherry-picked the extrinsic evidence on which they chose to rely and presented it out of context.  For example, the Alter Ego Defendants cling to the argument that they cannot be alter egos of SCSC because Algoma supposedly "stiffed" SCSC 'to the tune of $6.0 million'" (dkt. 145-1 at 8, 14, citing deposition of Jay Justice), but Jay Justice testified that he roughly estimated that Algoma was about $6 million behind in payments in 2015, not 2016 (dkt. 145-2 at 60–61).  Moreover, the $6 million that Mr. Justice alleged Algoma owed SCSC was not even pursuant to the Agreements at issue in this case.  Rather, it resulted from a contract between Algoma and a third-party broker, who apparently purchased the coal from SCSC, and this alleged debt predates Algoma filing for bankruptcy at the end of 2015.

After stripping away the misapplied heightened standard and citations to improper extrinsic evidence, the Court is left with nothing but the Alter Ego Defendants' unsupported legal conclusions that they cannot be alter egos of SCSC because "everyone else is doing it," a few citations to the SAC (many of which are inaccurate),[2] and a personal-jurisdiction argument that ignores the Defendants' alter-ego status.  (Dkt. 145-1 at 4–14, 22–23).  Once the Court

---

[2] The Alter Ego Defendants mis-cite the SAC as to the number of transfers to and from each defendant on pages 8 and 9 of docket 145-1: There are two transfers to James C. Justice Companies, Inc.; there are no transfers from James C. Justice Companies, LLC; there are no transfers from and nine transfers to Bluestone Energy Sales Corporation, there are no transfers from and ten transfers to Encore Leasing, LLC; there are three transfers from and thirteen transfers to Bluestone Resources, Inc.; there are one transfer from and twenty two transfers to Justice Family Farms, LLC; and there are no transfers from and twenty transfers to Southern Coal Corporation. (SAC, ¶¶100–47).  The Alter Ego Defendants also fail to include James C. Justice Companies, Inc. in their analysis of each individual defendant.  (*See* dkt. 145-1 at 10–11).

applies the proper pleading standard and considers the facts as alleged in the SAC, the Court should deny the Alter Ego Defendants' Motion to Dismiss.

## II. The Second Amended Complaint Sufficiently Alleges Plausible Claims for Relief against the Alter Ego Defendants.

"The legal test for determining when a corporate form should be ignored in equity cannot be reduced to a single formula that is neither over- nor under-inclusive." *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 989 (Del. Ch. 1987).[3] Although courts consider "numerous factors" in determining whether to "treat separate legal entities . . . as alter egos" (*id.*), the Second Circuit has focused the inquiry on two prongs: "(1) whether the entities in question operated as a single economic entity, and (2) whether there was an overall element of injustice or unfairness." *NetJets Aviation, Inc. v. LHC Communs., LLC*, 537 F.3d 168, 177 (2d Cir. 2008). The SAC sufficiently alleges facts to satisfy both prongs.

### A. The SAC Sufficiently Alleges that SCSC and the Alter Ego Defendants Operated as a Single Economic Entity.

The first prong of the alter-ego analysis is satisfied as it requires those in control of the company treat it as a separate economic entity. *See NetJets*, 537 F.3d at 177. The SAC alleges that the Alter Ego Defendants had overlapping officers, directors, office locations, and employees. (SAC, ¶¶89, 161–62, 167, 176, 181, 184, 186, 192–93, 196–97, 201, 205–06, 230). Employees of SCSC and the Alter Ego Defendants say they worked "for all of the companies" and received paychecks from "Bluestone," which they regarded as the "same thing" as SCSC, and Jay Justice, who owns "the family business," could not remember which entity paid him. (*Id.*

---

[3] The defendants assert that Delaware law applies to the alter-ego issue. (Dkt. 124, at 1.) Algoma does not concede the issue, but it assumes for purposes of this memorandum that Delaware law applies because the result would be the same under New York or Delaware law. *See Mercury Time, Inc. v. Gruen Mktg. Corp.*, No. 97-CV-0020 (JG), 1999 WL 342299, at *44 (E.D.N.Y. May 26, 1999) (regardless of whether New York or Delaware law applied, plaintiff adequately alleged alter ego claim).

at ¶¶ 83, 158–62). The information systems used by SCSC and the Alter Ego Defendants overlapped, as SCSC employees had Bluestone and Justice Corporation email addresses and Bluestone email signatures. (*Id.* at ¶¶156, 161–62). Bluestone Resources, Inc. issued invoices to Algoma for coal supposedly delivered by SCSC; an invoice directed Algoma to make a payment to a bank account in the name of Bluestone Energy Sales Corporation; and Bluestone's address listed on the invoice was the same as SCSC's address. (SAC, ¶167). Other invoices were issued by Bluestone Energy Sales Corporation but directed Algoma to remit payment to a bank account in SCSC's name (*id.* at ¶180), making it clear that SCSC and the Alter Ego Defendants are interchangeable.

Algoma further alleges that SCSC was undercapitalized because of funds being siphoned to the Alter Ego Defendants. (*Id.* at ¶¶100–47). Indeed, despite Algoma paying SCSC more than $54 million in 2016, some entity other than SCSC reported the revenue on its tax return. (*Id.* at ¶ 93). Millions of dollars paid by Algoma to SCSC was immediately transferred to the Alter Ego Defendants. (*Id.* at ¶¶ 94, 100–47). All of this siphoning was done at the behest of Jay Justice, who told Bluestone Industries, Inc.'s treasury department, which also handled SCSC's money, "what they are supposed to do" with the money. (*Id.* at ¶ 92). SCSC's undercapitalization resulted in its inability to satisfy its contractual obligations and rendered it purposefully judgment-proof. (*Id.* at ¶¶ 93–99).

In short, the SAC sufficiently alleges that SCSC and the Alter Ego Defendants failed to observe any corporate formalities. Funds that Algoma paid to SCSC were siphoned to the Alter Ego Defendants, and funds were commingled; officers, directors, employees, office space, and information systems overlapped; and owners and employees view "the family business" as one single company (SAC, ¶ 83). Because those controlling SCSC and the Alter Ego Defendants

6

treat them as one entity, the law treats them the same way. *See NetJets*, 537 F.3d at 177; *Irwin & Leighton*, 532 A.2d at 989 (when corporate "formalities are not respected, the legal fiction of corporateness becomes less 'real' in the everyday experience of those involved in the firm's operations and any expectation that others would treat it as a distinct, liability-limiting entity becomes less reasonable").

The Alter Ego Defendants do not deny that they operate as a single economic unit, instead they attempt to argue that they are not alter egos of SCSC because their intertwined structure is "typical" in the coal industry.[4] Indeed, the Alter Ego Defendants spend many pages trying to spin Algoma's "gross misunderstanding of how affiliated entities operate in the coal industry. . ." (Dkt. 145-1 at 2–3). The Alter Ego Defendants argue that they are not alter egos of SCSC because SCSC did not hide its shared ownership with the Alter Ego Defendants from Algoma (*id.* at 4), SCSC recorded its transactions with the Alter Ego Defendants (*id.* at 4), it "makes economic sense" to share staff between companies, SCSC was not engaging in fraud (*id.* at 5), "it is an owner's prerogative to infuse capital into his own company or companies to 'keep them afloat'. . ." (*id.* at 8), and the transfers between SCSC and the Alter Ego Defendants "are easily explained" (*id.* at 11). Notably, the Alter Ego Defendants offer no legal authority for this new "everyone is doing it" defense to alter ego liability. Just because other entities in the coal industry allegedly intertwine corporate structures does not mean that the intertwined entities are not also alter egos. Put another way, all the Alter Ego Defendants have managed to establish is that other unidentified entities in the coal industry may also be subject to alter ego liability.

---

[4] While the Motion to Dismiss is replete with assertions as to what is "typical" in the coal industry, the Alter Ego Defendants provide no actual support for those assertions as related to the SAC. What the Alter Ego Defendants "believe" is not the legal standard applied by the Court to a Motion to Dismiss, and as such is irrelevant.

Moreover, the Alter Ego Defendants' contention that Algoma's alter ego argument "centers almost entirely" on its allegation that SCSC was undercapitalized is factually incorrect. (Dkt. 145-1 at 6). The Alter Ego Defendants rely on *Cohen v. Schroeder*, 248 F. Supp.3d 511, 520 (S.D.N.Y. 2017) for the proposition that undercapitalization has "a limited role in veil-piercing cases." (Dkt. 145-1 at 6). Rather, *Cohen* emphasizes that undercapitalization cannot serve as the *sole* basis to pierce the veil, but is one factor to consider. *Cohen*, 248 F. Supp. 3d 520. But Algoma is not relying on undercapitalization alone to allege that the Alter Ego Defendants and SCSC operated as a single economic entity. Algoma also alleges, and the Alter Ego Defendants themselves admit in their Motion to Dismiss, that those in charge of SCSC and the Alter Ego Defendants treat the entities as a single comingled economic unit.

### B.   *The SAC Sufficiently Alleges an Overall Element of Injustice or Unfairness.*

As Magistrate Judge Lehrburger noted (Dkt. 71, at 9), allegations of undercapitalization and siphoning of funds are sufficient to satisfy the "injustice or unfairness" element. *See NetJets*, 537 F.3d at 183; *McBeth v. Porges*, 171 F. Supp. 3d 216, 234 (S.D.N.Y. 2016); *De Sole v. Knoedler Gallery LLC*, 139 F. Supp. 3d 618, 669 (S.D.N.Y. 2015); *TradeWinds Airlines, Inc. v. Soros*, No. 08 Civ. 5901, 2012 U.S. Dist. LEXIS 39459, at *18–19, 2012 WL 983575 (S.D.N.Y. Mar. 22, 2012); *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 151 (S.D.N.Y. 2012); *Leber Assocs., LLC v. Entm't Group Fund, Inc.*, No. 00 Civ. 3759 (LTS)(MHD), 2003 U.S. Dist. LEXIS 13009, at *45–47, 2003 WL 21750211 (S.D.N.Y. July 29, 2003). As discussed above, Algoma sufficiently alleged that SCSC was undercapitalized because of funds being siphoned to the Alter Ego Defendants. (SAC at ¶¶ 100–47). Algoma's additional factual allegations include the fact that SCSC immediately transferred millions of dollars that Algoma paid it to the Alter Ego Defendants upon receipt. (*Id.* at ¶¶ 94, 100–47).

The Alter Ego Defendants' argument that there is no element of injustice or unfairness because "SCSC attempt[ed] to 'make it work'" and did in fact deliver some coal under its agreements with Algoma misses the point and lacks any legal support. (Dkt. 145-1 at 13–14). The fact remains that the SCSC did not deliver the amount of coal the Agreements obligated it to provide to Algoma, and then acted unfairly and in its own self interest by transferring all available funds to the Alter Ego Defendants. Indeed, the Alter Ego Defendants now flaunt the unfairness of the undercapitalization and siphoning in their Motion to Dismiss: "any recovery from the sales company [Algoma] contracted with, SCSC, may be limited" (Dkt. 145-1 at 2). The Alter Ego Defendants, who act as a single comingled unit and collectively undercapitalized and siphoned funds from SCSC, should be liable for SCSC's obligations to Algoma – regardless of whether SCSC shipped any coal to Algoma and regardless of the purported "standard" corporate improprieties in the coal industry.

### III. Because the Second Amended Complaint Alleges a Plausible Claim for Relief Against the Alter Ego Defendants, the Court Has Personal Jurisdiction Over Them.

Alter-ego entities are a single entity for purposes of personal jurisdiction, which means a defendant's alter egos are subject to personal jurisdiction if the court already has personal jurisdiction over the defendant. *See Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009). In *Cardell Financial Corp. v. Suchodolski Assocs.*, for example, the court exercised personal jurisdiction over a defendant because the defendant was the alter ego of a party that had consented to personal jurisdiction in New York by signing a contract with a New York choice-of-law provision. *Cardell Fin. Corp. v. Suchodolski Assocs.*, No. 09 Civ. 6148 (VM) (MHD), 2012 U.S. Dist. LEXIS 188295, at *93–94 (S.D.N.Y. July 17, 2012); *see also Am. Lecithin Co. v. Rebmann*, No. 12-CV-929 (VSB), 2017 U.S. Dist. LEXIS 162037, at *24 (S.D.N.Y. Sep. 30, 2017).

Here, SCSC consented to personal jurisdiction in New York by executing the Coal Supply Agreement, which includes a provision submitting "to the exclusive jurisdiction of the United States District Court for the Southern District of New York" and waiving any right to object to personal jurisdiction. Thus, because Algoma has adequately pleaded a claim against the Alter Ego Defendants, they also are subject to personal jurisdiction in New York to the same extent as SCSC.

### IV. The Alter Ego Defendants' Judicial Admissions Demonstrate that They Are Alter Egos as a Matter of Law.

The Alter Ego Defendants make a variety of statements in their brief that support a finding of alter ego liability and must be treated as judicial admissions. "A court can appropriately treat statements in briefs as binding judicial admissions of fact." *Purgess v. Sharrock*, 33 F.3d 134, 143–44 (2d Cir. 1994) (holding that the district court properly admitted "statement made by defense counsel in a memorandum of law . . . filed in support of defendants' motion to dismiss"). Here, the Alter Ego Defendants' Motion to Dismiss (dkt. 145-1) contains several statements that are judicial admissions lending factual support to the legal conclusion that they are alter egos because they "operated as a single economic entity" and "there was an overall element of injustice or unfairness." *NetJets Aviation*, 537 F.3d at 177.

#### A. *The Alter Ego Defendants Admit They Operate as a Single Economic Entity.*

The Alter Ego Defendants' Motion contains many admissions that support that they and SCSC operate as a single economic entity. First, the Alter Ego Defendants admit that they share employees, officers, services, facilities, and equipment:

- "… Summer Harrison, the Vice President of Treasury for Bluestone, who also handles financial transactions and performs other tasks on behalf of multiple coal-related companies." (Dkt. 145-1, at 4);

- Summer Harrison "takes her marching orders from Jay Justice in service of multiple companies, for all of which he serves as the Chief Executive Officer…" (*Id.*);

10

- "Encore Leasing owns aircraft that are utilized by employees of the various Justice entities." (*Id.* at 12); and

- "…[T]hree different mining companies owned by the Justices may need mining engineering services but none of them individually is large enough to keep a full-time engineering staff. It only makes sense to share such services between [sic] the companies." (*Id.* at 4–5).

Likewise, the Alter Ego Defendants readily admit that they operated as a single economic entity by sharing funds to conduct business:

- "It also makes economic sense to have Bluestone or another entity with ready cash initially pay for payroll, mineral leases, royalties and the like for a mining operation. Once the coal is mined and sold, the proceeds of sale are available to the mining entity to pay back the intercompany advance/loan made by Bluestone." (Dkt. 145-1 at 5);

- "New Defendant Bluestone Energy Sales Corporation was created specifically to assume the contract with Algoma and to facilitate obtaining a $60 million line of credit from the primary Justice financial institution, which was needed to fulfill the Algoma contract." (*Id.*);

- "…BESC was formed as a coal sales company in November 2015, just as the Agreement was getting started with the idea that it would take over the SCSC duties under the Agreement." (*Id.* at 12);

- "…SCSC borrowed $60 million in order to fund its participation under the Consignment Agreement." (*Id.* at 14); and

- "In order to obtain a line of credit to finance the consignment arrangement required by Algoma, Carter Bank and Trust required that a new entity be created." (*Id.* at 20–21).

**B.** *The Alter Ego Defendants Admit Injustice and Unfairness in Their Dealings with Algoma.*

The Alter Ego Defendants also make factual admissions that support an overall element of injustice or unfairness. In fact, the Alter Ego Defendants essentially admit that SCSC is judgment proof, stating that "any recovery from the sales company [Algoma] contracted with, SCSC, may be limited." (Dkt. 145-1, at 5). Additionally, they readily admit that they

undercapitalized SCSC and siphoned funds:

- "The ongoing transfers were to keep SCSC afloat, which allowed it to continue to ship coal to Algoma – a benefit conveniently ignored by Algoma." (Dkt. 145-1 at 9);

- "The transfers, as with others, were fully documented intercompany loans to assist with the financial difficulties Southern Coal Sales experienced." (*Id.* at 12);

- "Southern Coal Corporation loaned funds to SCSC on 21 occasions as loans to keep it afloat." (*Id.* at 13);

- "What Algoma fails to take into account, however, is that conglomerates or affiliated entities frequently use intercompany transfers to shore up one entity that needs financial support, and are repaid when circumstances allow it. The other options are to let the company suffer financially or even fail, or to borrow from a bank at a higher cost." (*Id.* at 7);

- "Indisputably, it is an owner's prerogative to infuse capital into his own company or companies to 'keep them afloat,' and the coal industry, in particular, experiences ups and downs that require such support." (*Id.* at 8);

- "It also makes economic sense to have Bluestone or another entity with ready cash initially pay for payroll, mineral leases, royalties and the like for a mining operation. Once the coal is mined and sold, the proceeds of sale are available to the mining entity to pay back the intercompany advance/loan made by Bluestone." (*Id.* at 5);

- "New Defendant Bluestone Energy Sales Corporation was created specifically to assume the contract with Algoma and to facilitate obtaining a $60 million line of credit from the primary Justice financial institution, which was needed to fulfill the Algoma contract." (*Id.*); and

- "In order to obtain a line of credit to finance the consignment arrangement required by Algoma, Carter Bank and Trust required that a new entity be created…The line of credit was required to meet the financial needs of Algoma…The creation of BESC and its issuance of invoices was all part of that accommodation." (*Id.* at 20–21).

Based on these judicial admissions contained in the Alter Ego Defendants' Motion to Dismiss, along with other evidence discovered in this lawsuit, Algoma respectfully requests that the Court allow it to file a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(a) on the alter ego parts of its claims for breach of contract. *See Orange County Water Dist. v. Unocal Corp. In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 67 F. Supp.3d 619, 635

(S.D.N.Y. 2014) (granting summary judgment in part based on judicial admission from prior briefing). Algoma's Motion would show that no genuine dispute of material fact exists and that Algoma is entitled to judgment as a matter of law holding the Alter Ego Defendants liable for any breach of contract against SCSC that Algoma may prove at trial. Should the Court grant this request, Algoma would provide the Alter Ego Defendants with its Local Rule 56.1 Statement of Material Facts, per Judge Torres' Individual Practices III (C)(i).

**V.      Conclusion**

The Alter Ego Defendants' Memorandum in Support of their Motion to Dismiss does not entitled them to dismissal. Instead, it confirms Algoma's alter ego allegations as set forth in the SAC. Not only do the Alter Ego Defendants improperly employ a heightened pleading standard, extrinsic evidence, and unsupported legal conclusions, they admit facts that actually establish that they are alter egos of SCSC. Algoma respectfully requests that the Court deny the Alter Ego Defendants' Motion to Dismiss and grant Algoma leave to file a motion for summary judgment on their alter ego allegations.

Date:   July 12, 2019

Respectfully submitted,

THOMPSON HINE LLP

*/s/  Kip T. Bollin*
Kip T. Bollin (*admitted pro hac vice*)
Laura L. Watson (*admitted pro hac vice*)
Mark R. Butscha, Jr.
Melissa A. Barrett (*admitted pro hac vice*)
3900 Key Center, 127 Public Square
Cleveland, OH 44114
Tel: (216) 566-5500
Fax: (216) 566-5800
kip.bollin@thompsonhine.com
laura.watson@thompsonhine.com
mark.butscha@thompsonhine.com
melissa.barrett@thompsonhine.com

-and-

Rebecca Brazzano
335 Madison Ave., 12th Floor
New York, NY 10017-4611
Tel:  (212) 344-5680
Fax:  (212) 344-6101
Rebecca.Brazzano@thompsonhine.com

*Attorneys for Plaintiff Essar Steel Algoma Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2019, I caused the foregoing to be served on all counsel of record, electronically via the Court's electronic filing system.

*/s/ Kip. T. Bollin*
*Attorney for Essar Steel Algoma, Inc.*