USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __8/27/2019__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ESSAR STEEL ALGOMA INC.,                :           17-mc-360 (AT) (RWL)
                                        :
                      Plaintiff,        :    **REPORT AND RECOMMENDATION**
                                        :     **TO HON. ANALISA TORRES:**
        - against -                     :        **MOTION TO AMEND**
                                        :
SOUTHERN COAL SALES CORPORATION,        :
                                        :
                      Defendant.        :
-------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Essar Steel Algoma Inc. ("Algoma") brings this action against Defendant Southern Coal Sales Corp. ("Southern Coal") for breach of certain coal supply contracts. In the midst of expert discovery, Southern Coal sought leave to amend to assert counterclaims for breach of the same contracts, breach of the implied covenant of good faith and fair dealing in the same contracts, and two counts for declaratory judgment concerning the same contracts. For the following reasons, I recommend Southern Coal's motion be DENIED.

## Background

Algoma originally filed this case in a bankruptcy adversary proceeding in the District of Delaware, where Southern Coal is incorporated. (*See* Dkt. 1.) Southern Coal invoked a forum selection clause, and the case was transferred to this district in September 2017. (*Id.*) On April 25, 2018, Algoma filed a first Amended Complaint. (Dkt. 39.)

In the first Amended Complaint, Algoma asserted three claims for breach of contract. Those claims stem from a series of agreements for supply of coal to Algoma by

Southern Coal (the "Agreements").  The Agreements include a coal supply agreement entered into as of November 3, 2015 governing delivery for the period November 1, 2015 - March 31, 2017 (the "2015 Agreement"); an amended coal supply agreement (the "Amended Agreement") entered into as of April 25, 2016, governing delivery for the period April 1, 2016 - March 31, 2017; and a term sheet effective September 22, 2016 that modified certain terms of the earlier Agreements for delivery of coal for the remainder of 2016 (the "Term Sheet").  (Dkt. 39-1, 39-2 and 39-3.)

Under the Agreements, Southern Coal was obligated to supply Algoma with over half its coal-supply needs for a total of 780,000 tons of coal.  Algoma alleges that Southern Coal breached the Agreements between April 1, 2016 to March 31, 2017, by delivering only 246,526 tons of coal, less than a third of the contracted amount.  Algoma further alleges that coal delivered by Southern Coal during that same period was not analyzed as it should have been and did not meet quality specifications required by the Agreements.  (Dkt. 106 ¶¶ 239-76.)

On September 5, 2018, Algoma sought leave to file a second amended complaint. Algoma asserted that it had learned of facts supporting an alter-ego theory during depositions taken the week of March 12, 2018.  (Dkt. 53 at 4.)  The Court granted leave to Algoma to amend its complaint to include the alter-ego theory against various inter-related corporate entities.  (Dkt. 71.)  On December 7, 2018, Algoma filed its Second Amended Complaint ("SAC"), which remains the operative complaint.   (Dkt. 106.) Southern Coal has since filed a motion to dismiss the alter-ego claims, which remains pending at this time.  (Dkt. 145.)

After multiple extensions, fact discovery closed on March 29, 2019.  (Dkt. 115.)
Roughly two months later, Southern Coal moved to amend its answer to include four new
counterclaims.  (Dkt. 142.)  The four proposed counterclaims concern two different time
periods for delivery of coal:  the 2015 Delivery Period and the 2016 Delivery Period.  The
first proposed counterclaim alleges Algoma breached the Agreements when it purchased
coal from third-party producers or when it did not buy coal at all.  The second proposed
counterclaim alleges that based on the same conduct alleged in the first counterclaim,
Algoma also breached the implied covenant of good faith and fair dealing.  The third
proposed counterclaim seeks a declaratory judgment that Algoma violated the
Agreements.  The fourth proposed counterclaim seeks a declaratory judgment that any
further performance of the Amended Agreement is limited to the terms set forth in the
Term Sheet.

Algoma opposes the amendments.  It argues that the proposed counterclaims are
futile, come too late, and would unduly prejudice Algoma.

**Legal Standard for Motion to Amend**

Two Federal Rules of Civil Procedure may be implicated by a motion to amend.
Generally speaking, Rule 15(a) applies to amendments made prior to a scheduling order
deadline to amend, while both Rule 15(a) and Rule 16(b) come into play when
amendments are sought to be made after a deadline to amend has expired.  The
distinction is important because under Rule 16(b), leave to amend requires "good cause"
following expiration of the deadline, whereas the standards under Rule 15(a) are
considered more flexible:  "Where . . . the Court sets a deadline for amendments to the
complaint and a party moves to amend once the deadline has passed, the Court must

balance the more liberal standard of Rule 15(a) against the requirements of Federal Rule of Civil Procedure 16(b)." *Mohegan Lake Motors, Inc. v. Maoli*, No. 16 Civ. 6717, 2018 WL 4278352, at *5 (S.D.N.Y. June 8, 2018), at * 5 (quoting *Volunteer Fire Association of Tappan, Inc. v. County of Rockland*, No. 09 Civ. 4622, 2010 WL 4968247, at *3 (S.D.N.Y. Nov. 24, 2010)).

Under Rule 15(a)(2), "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Aetna Casualty. & Surety Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603 (2d Cir. 2005). A district court, however, "has discretion to deny leave for good reason." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). The Second Circuit has held that a Rule 15(a) motion "should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *Aetna Casualty*, 403 F.2d at 603-04 (quoting *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir.1987)). Delay alone, however, generally is an insufficient justification for the denial of a motion to amend under Rule 15(a). *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993)).

Prejudice to the nonmoving party may arise when the proposed amendment causes the nonmoving party to "expend significant additional resources to conduct discovery and prepare for trial," or when the proposed amendment causes significant delay to the disposition of the original claim or claims. *Maoli*, 2018 WL 4278352, at *5 (S.D.N.Y. June 8, 2018) (quoting *Block*, 988 F.2d at 350). "The degree of potential prejudice a motion to amend may cause is evaluated against the overall progress of the litigation: the closer to the end of discovery or the closer to trial a motion to amend is filed,

the more likely that it will cause prejudice and delay to the nonmoving party." *Maoli*, 2018 WL 4278352, at *5 (citing *GEM Global Yield Fund, Ltd. v. Surgilight, Inc.*, 2006 WL 2389345, at *11 (S.D.N.Y. Aug. 17, 2006)).

The standards under Rule 16(b) are more exacting. "Under Rule 16(b), a party moving to amend after the applicable deadline must demonstrate good cause. Whether good cause exists depends on the diligence of the moving party. In other words, the movant must show that the deadlines could not have been reasonably met despite its diligence." *Tappan*, 2010 WL 4968247, at *3 (internal quotations and alteration omitted). The burden of showing diligence is borne by the moving party. *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 175 (S.D.N.Y. 2014) (citation omitted). "A party is not considered to have acted diligently where the proposed amendment is based on information that the party knew, or should have known, in advance of the motion deadline." *Id.* at 174-75. Although "the primary consideration is whether the moving party can demonstrate diligence[,] [i]t is not . . . the only consideration." *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). Rather, the district court, "in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice [the answering party]." *Id.* Accordingly, delay and prejudice are relevant under both Rules 15(a) and 16(b).

Here, the Court's scheduling order set February 19, 2018, as the deadline to amend. (Dkt. 29 ¶ 3.) Southern Coal sought leave to amend on May 20, 2019, over a year later. (Dkt. 142.) Accordingly, Southern Coal must demonstrate "good cause" to

amend.   Whichever standard is applied, however, Southern Coal's motion should be denied.

## Analysis

Southern Coal's motion to amend should be denied.   Southern Coal unduly delayed and has not demonstrated diligence that would support a finding of good cause. Amendment at this time would unduly prejudice Algoma.   And all but one of Southern Coal's claims are unquestionably futile.

**I.      Undue Delay and Lack of Diligence**

Southern Coal's proposed counterclaims come late in this litigation, roughly two years after the case was first filed, and roughly one year and three months after the amended pleading deadline.   (*See* Dkt. 1, 29, 142.)   Fact discovery closed on March 29, 2019, about two months before Southern Coal filed its motion.   (*See* Dkt. 115, 142.)   As explanation for this inordinate delay, Southern Coal offers only that it recently learned of the "extent" of Algoma's alleged breaching conduct when Southern Coal's expert analyzed the contracts and related documents using "the specialized expertise for which they were retained."   (Defendant's Reply in Support of the Motion to Amend ("Def. Reply") (Dkt. 144 at 1, 4-5.)

This proffered explanation is specious.   Southern Coal's opening brief provided no explanation for its delay, never once mentioning the work of its experts that supposedly elucidated information enabling Southern Coal to assert counterclaims of which it could not previously have been aware.   And the information purportedly "discovered" by the experts was that Algoma "intentionally interfered" with Southern Coal's ability to deliver coal and "was affirmatively acting to block" Southern Coal deliveries.   (Def. Reply at 4.)

"Intent" and "affirmatively acting" are not the stuff of expert testimony, certainly not here. And Southern Coal has not brought forth any information suggesting that their experts' area of "specialized expertise" is determining whether a party acted intentionally.

Moreover, Southern Coal's other arguments belie the notion that they could not have previously asserted the proposed counterclaims. Southern Coal asserts that Algoma should not be surprised by the proposed counterclaims because Southern Coal "does not raise *any* claims that were not previously included as Affirmative Defenses." (Def. Reply at 1) (emphasis in original). Indeed, in its Answer Southern Coal raised a multitude of affirmative defenses based on Algoma's alleged breach of contract and the parties' rights and obligations under the Agreements. (*See* Dkt. 125 at 30-32 (Third and Sixth-Tenth Affirmative Defenses).) Thus, Southern Coal admits, and its Answer demonstrates, that Southern Coal was aware of its potential counterclaims at the outset of this litigation, long before the time it moved to amend.

Southern Coal offers nothing to demonstrate that it could not have met the amended pleadings deadline despite its diligence. Succinctly put, Southern Coal unduly delayed and cannot demonstrate diligence that would support finding good cause for that delay.[1]

## II.   Prejudice to Algoma

Algoma argues, aptly, that it would be unduly prejudiced by the proposed amendments because this action already has been pending for more than two years, and

---

[1] Although not a basis for the Court's decision, it's noteworthy that Southern Coal sought leave to amend to add the proposed counterclaims less than three weeks after the Court granted most of Algoma's motion to amend adding several alter-ego defendants. (*See* Dkt. 127, 132.) The timing, taken together with the relative weakness of Southern Coal's motion, could fairly be construed as indicating a retaliatory motive and bad faith.

further discovery would be required even though fact discovery has been completed and expert reports exchanged.   Southern Coal counters that "[t]he additional discovery required" by the counterclaims "will not be significant," and that if Algoma's alter-ego claims survive Southern Coal's motion to dismiss, further discovery would be required in any event.  (Def. Reply at 7-8.)

Southern Coal once again offers arguments that are not consistent with the record. First, Southern Coal's counterclaims implicate discovery that the parties previously agreed would not be sought.  Specifically, Southern Coal's counterclaims allege breaches of both the 2015 and 2016 Delivery Periods.  But, likely due to its recognition that the 2015 Agreement obligations had been extinguished by the 2016 Amended Agreement, Southern Coal agreed at the outset of discovery "not to pursue fact discovery related to pre-2016 conduct and limited [its] document collection to those documents dated after January 1, 2016."[2]  (Plaintiff's Memorandum in Opposition to the Motion to Amend ("Pl. Mem.") (Dkt. 143) at 9.)   Re-opening discovery now to produce documents and take depositions concerning 2015, when the parties proceeded on the premise that 2015 conduct was not at issue is contrary to the parties' agreement, would saddle Algoma with new discovery burdens and potentially undermine strategic and tactical decisions made through the entire course of discovery.[3]

---

[2] Southern Coal's Reply does not refute or even address this characterization of the parties' discovery agreement.

[3] The Court recognizes that if amendment were permitted with respect to only the 2016 Delivery Period, the prejudice associated with the 2015 period would not be relevant. Denial of the motion to amend would still be warranted, however, based on the remainder of the analysis.

Second, Southern Coal's argument that additional discovery will be needed in any event if its motion to dismiss Algoma's alter-ego claims is not granted ignores the prior order of this Court.  When this Court granted Algoma's motion to amend to add alter-ego claims, the Court was mindful of the then imminent deadline for the conclusion of fact discovery.  Accordingly, the Court ordered that the only additional alter-ego discovery permitted would be that which could be conducted within the framework of "existing demands and depositions previously noticed" and that "no alter-ego discovery shall separately be taken of third parties or any of the proposed additional defendants."  (Dkt. 62 ¶ 2.)

The facts of this case thus do not fit the maxim that an "adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading."  *Maoli*, 2018 WL 4278352, at *6; *see also Flood v. Carlson Restaurants Inc.*, No. 14 Civ. 2740, 2016 WL 3221146, at *2 (S.D.N.Y. June 7, 2016); *Scott v. Chipotle Mexican Grill*, Inc., 300 F.R.D. 193, 200 (S.D.N.Y. 2014).  Rather, the additional discovery implicated by Southern Coal's counterclaims comes after the parties have completed fact discovery, which they undertook on the agreed-upon premise that that very discovery would not be pursued.

Accordingly, the Court finds that Algoma will be unduly prejudiced by permitting Southern Coal to amend.  Even if there were no undue prejudice, however, the extent of undue delay and lack of diligence, discussed above, and futility, discussed below, would warrant denial of Southern Coal's motion.

**III.   Futility**

All but one part of one of Southern Coal's counterclaims are futile.

### A.  Futility Standard

"[L]eave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim."  *Milanese v. Rust–Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Ricciuti v. New York City Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991)).  To survive a Rule 12(b)(6) motion, a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In evaluating a motion to dismiss for failure to state a cause of action, a district court "accept[s] all material facts alleged in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor."  *Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (internal quotation marks omitted).  However, this tenet is "inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  "Rather, the complaint's factual allegations must be enough to raise a right to relief above the speculative level . . . *i.e.*, enough to make the claim plausible."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quotations and brackets omitted).  A pleading is properly dismissed where, as a matter of law, "the allegations in [the pleading], however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558 (quotations and brackets omitted).

While a court is normally confined to the facts alleged in the pleadings, it is well settled that a court may consider any "written instrument attached to [the pleading] as an exhibit or any statements or documents incorporated in it by reference." *Dunhman v. City of New York*, 295 F. Supp. 3d 319, 327 (S.D.N.Y. 2018) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)); s*ee also Staehr v. Hartford Financial Services Group Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("the general rule is that a district court may not look outside the complaint and the documents attached thereto in ruling on a Rule 12(b) motion to dismiss . . . ."). In that regard, if "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Group Inc.*, No. 11 Civ. 559, 2012 WL 1027639, at *2 (S.D.N.Y. March 27, 2012) (citing *Barnum v. Millbrook Care Ltd. Partnership*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y.1994)). Relevant here are the Agreements and Term Sheet that are the basis of the litigation.

## B. Breach of Contract Claim Arising From the 2015 Delivery Period

In its proposed First Counterclaim, Southern Coal alleges that Algoma breached the terms of the Agreements with respect to both the 2015 and 2016 Delivery Periods. Southern Coal alleges breach for the 2015 Delivery Period when Algoma chose not to purchase 133,014 tons of coal from Southern Coal. (Proposed Amended Answer (Dkt. 142-2) ¶¶ 4-8, 21-24.) Algoma argues that the plain language of the Amended Agreement, executed on April 25, 2016, extinguished any of the parties' legal obligations from 2015. (Pl. Mem. at 2-4.) Algoma is correct.

Southern Coal concedes that the Amended Agreement might ultimately "call into question" the claims arising from the 2015 Delivery Period, but contends that the Court must limit itself to Southern Coal's pleading, accepting all allegations as true.  (Def. Reply at 2-3.)  As explained above, however, Southern Coal's proposition is erroneous.  While the Court must generally accept the allegations in Southern Coal's pleading as true, the Court may also look to the 2015 Agreement and the 2016 Amended Agreement because they have been attached, referenced to, and are integral to the pleadings.  *Dunham*, 295 F. Supp. 3d at 327 (quoting *Mangiafico*, 471 F.3d at 398).  In considering the proposed counterclaim in light of the Amended Agreement, the Amended Agreement controls.  *Poindexter*, 2012 WL 1027639, at *2 (when "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true").

The 2016 Amended Agreement states in relevant part:

Any obligation relating to any balance of tons remaining to be delivered on consignment relating to the First Contract Year will be cancelled.

(Dkt. 39-2 § A.)  The Amended Agreement defines the "First Contract Year" as November 1, 2015 – March 31, 2016; that is, the 2015 Delivery Period.  (Dkt. 142-7 § 2.1.)  The language of the Amended Agreement is unambiguous.  Any dispute about the 2015 Delivery Period was extinguished by the Amended Agreement.  Southern Coal offers no other argument outside the patently incorrect position that the Court must not consider the Amended Agreement in making its decision.  The motion to amend should be denied as to the breach of contract claims arising from the 2015 Delivery Period because the claim would be futile.

**C.  Breach of Contract Claim Arising From the 2016 Delivery Period**

For the 2016 Delivery Period, Southern Coal alleges that Algoma breached the Agreements by demanding that Southern Coal cease or limit coal deliveries at various times.  (Proposed Amended Answer ¶¶ 11-24.)  Algoma argues that the plain language from the Amended Agreement allowed Algoma to purchase coal from other sources, which makes Southern Coal's amendments futile.  (Pl. Mem. at 5.)  Algoma also argues that the proposed counterclaims offered are merely defenses to the related claims in the SAC.[4]  (*Id.*)  In response, Southern Coal argues that it has sufficiently stated a claim and that Algoma should not be surprised by proposed claims from the 2016 Delivery Period because Southern Coal previously asserted their substance in its affirmative defenses. (Def. Reply at 3.)

Turning to Algoma's futility argument, the basis of Southern Coal's breach of contract claim from the 2016 Delivery Period is that Algoma "instead purchased coal from third-party producers at lower prices than the contract prices for coal under the [Amended Agreement] with Southern Coal, or simply did not purchase coal at all . . . ."  (Proposed Amended Answer ¶ 22.)  In response to that allegation, Algoma directs the Court to the Amended Agreement, which states in relevant part:

> Essar's [sic] has the right to purchase and use additional High Volatile Coal from other sources.

---

[4] Algoma also asserts a procedural argument as to why Southern Coal's amendment for the 2016 Delivery Period should not be allowed: Southern Coal did not include the 2016 Delivery Period claims in its letter motion seeking leave to amend. Although Southern Coal's omission is curious, Algoma's argument has no teeth.  Algoma points to the individual rules of both the undersigned and District Judge Torres. (Pl. Mem. at 4.)  While both individual rules require a movant to summarize or set forth the basis of an anticipated motion in a letter to the Court, the Court is not precluded from considering claims not included in that letter.

(Amended Agreement, § A art. 3.)

The Court does not find that provision dispositive of Southern Coal's claim for the 2016 Delivery Period.  Although the Amended Agreement permits Algoma to purchase "additional" coal from other sources, that does not necessarily mean that Algoma could purchase from other sources *in lieu of* purchasing the contracted amount of coal from Southern Coal.  The parties' obligations and rights under the contract must be considered together, not in isolation.  *See, e.g., Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 159-62 (S.D.N.Y. 2014) (discussing how New York contract law interprets obligations and rights taken together in contract law).[5]

In short, the Court cannot conclude at this juncture that Southern Coal's proposed counterclaim concerning the 2016 Delivery Period would be futile.  As explained earlier, however, Southern Coal's belated assertion of this claim, Southern Coal's lack of diligence, and the undue prejudice to Algoma warrant denial of Southern Coal's motion to amend to add this claim.[6]

---

[5] The parties do not dispute that New York law applies to the agreements at issue. (*Compare* Second Amended Complaint (Dkt. 106) ¶¶ 241 *with* Second Answer (Dkt. 125) ¶¶ 156.)

[6] The Court notes that disallowing amendment of the counterclaim regarding the 2016 Delivery Period does not prejudice Southern Coal because it already has asserted Algoma's alleged breaches of the parties' contracts by way of affirmative defenses.  (*See, e.g.,* Dkt. 125 at 30-31 (Third and Tenth Affirmative Defenses).)  *See Agerbrink v. Model Service LLC,* 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016) (prejudice "'inquiry involves a balancing process,' weighing any potential prejudice to the opposing party against the prejudice that the moving party would experience if the amendment were denied") (quoting *Oneida Indian Nation of New York State v. County of Oneida*, 199 F.R.D. 61, 77 (N.D.N.Y. 2000).)

### D.      Breach of the Implied Covenant of Good Faith and Fair Dealing

Algoma contends that Southern Coal's proposed Second Counterclaim for breach of the implied covenant of good faith and fair dealing is futile because New York law does not permit such a claim where the claimant has also alleged breach of contract premised on the same conduct.  Southern Coal notably did not respond to this legal argument in its opposition.  That is not surprising as Algoma is correct.

Under New York law, a party cannot state a claim for breach of the implied covenant of good faith and fair dealing if it would be "premised on the same conduct that underlies the breach of contract cause of action and [would be] intrinsically tied to the damages allegedly resulting from a breach of the contract."  *Reznick v. Bluegreen Resorts Management, Inc.*, No. 18 Civ. 47, 2019 WL 1004589, at *4 (S.D.N.Y. March 1, 2019) (quoting *MBIA Insurance Corp. v. Merrill Lynch*, 916 N.Y.S.2d 54, 55 (1st Dep't 2011)); *see also Goodrich Capital, LLC v. Vector Capital Corp.*, No. 11 Civ. 9247, 2012 WL 4123401, at *5 (S.D.N.Y. June 26, 2012) (dismissing claims for breach of the implied covenant of good faith and fair dealing where the claim "merely duplicate[s] the . . . theories on which plaintiffs have based their breach of contract claims").

Southern Coal's claim that Algoma breached the implied duty of good faith and fair dealing is premised on the same conduct underlying its breach of contract claim.  (*See* Proposed Amended Answer ¶¶ 25-28.)  Southern Coal's claim thus is not permitted under New York law and would be futile to assert.  Southern Coal's motion to amend should be denied as to its claim for breach of the implied covenant of good faith and fair dealing.

15

### E.      Declaratory Judgment Claims

Southern Coal's proposed Third and Fourth Counterclaims seek declaratory judgment.  First, Southern Coal seeks a declaration that Algoma violated the terms of both the 2015 Agreement and the 2016 Amended Agreement.  Second, Southern Coal seeks a declaration that "further" performance by Southern Coal under the Amended Agreement is limited to the terms set forth in the Term Sheet.  (Proposed Amended Answer ¶¶ 29-34.)   Algoma argues that these counterclaims should not be allowed because they are duplicative of the Second and Third Claims in Algoma's Amended Complaint.  (Pl. Mem. at 7.)   Algoma also argues that Southern Coal's declaratory judgment claims are merely defenses and are nothing more than a gambit to reopen discovery, causing further delay.  (*Id.* at 7-8.)  In response, Southern Coal states that its counterclaims seeking declaratory judgment will streamline other decisions in the litigation or clarify any further performance by Southern Coal.  (Def. Reply at 5-6.)

"The Declaratory Judgment Act provides that, '[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'"  *LiveIntent, Inc. v. Naples*, 293 F. Supp. 3d 433, 446 (S.D.N.Y. 2018) (alterations in original) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007)).  The Declaratory Judgment Act "confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 278, 115 S.Ct. 2137 (1995).  In determining whether a declaratory judgment action is warranted, a court will consider the overall situation and whether declaratory judgment (1) will "serve a useful purpose in clarifying and settling the legal relations in issue;" or (2)

"afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Camofi Master LDC v. College Partnership, Inc.*, 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006 (quoting *Continental Casualty Co. v. Coastal Savings Bank*, 977 F.2d 734, 737 (2d Cir.1992)). Neither purpose is served here.

Southern Coal's first claim for declaratory judgment seeks a determination that Algoma violated the Agreements by assessing penalties based on testing results that did not comply with the Agreements. But this claim merely is duplicative of Southern Coal's First Counterclaim alleging that Algoma breached the Agreements for the 2016 Delivery Period. (Proposed Amended Answer ¶¶ 11-24.) The claim also is duplicative of Southern Coal's affirmative defenses alleging that Algoma breached the Agreements. (*See* Dkt. 125 at 30-31 (Third, Eighth, and Tenth Affirmative Defenses).) And the claim will effectively be resolved by resolution of Algoma's claims, which include allegations concerning its quality testing of Southern Coal product and resulting penalties. (*See* Dkt. 106 ¶¶ 47-48, 68-81.)

Neither criteria for declaratory judgment is served by allowing a claim that merely duplicates Southern Coal's proposed breach of contract claim and its defenses and that will be addressed in resolving Algoma's claims. *See Fleisher v. Phoenix Life Insurance Co.*, 858 F. Supp. 2d 290, 301-02 (S.D.N.Y. 2012) (dismissing declaratory judgment claim because it was duplicative of breach claim and thus would not serve a useful purpose); *Intellectual Capital Partner v. Institutional Credit Partners LLC*, No. 08 Civ. 10580, 2009 WL 1974392, at *6 (S.D.N.Y. July 8, 2009) ("declaratory relief would serve no useful purpose as the legal issues will be resolved by litigation of the breach of contract claim"); *Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Entertainment Corp.,* No.

17

08 Civ. 1558, 2009 WL 577916, at *11 (S.D.N.Y. March 2, 2009) ("Because this Court has already analyzed the parties' rights and obligations under the [contracts] in connection with Plaintiffs' breach of contract claims, a declaratory judgment on the same issues would be superfluous.").  Accordingly, Southern Coal's motion to amend should be denied as to its first counterclaim for declaratory relief.

Southern Coal's second proposed counterclaim for declaratory judgment seeks a declaration that "further" performance by Southern Coal under the Amended Agreement be limited to the terms set forth in the Term Sheet.[7]  Like the first claim for declaratory judgment, this claim will also be borne out by the claims and defenses already asserted in the pending litigation.  (*See* Dkt. 125, at 30-31 (Sixth and Seventh Affirmative Defenses).)  This claim for declaratory judgment, as with the first, does not serve either purpose of declaratory judgment.  *See Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F.Supp.2d 231, 249 (S.D.N.Y.2006) ("Plaintiffs' declaratory judgment claim seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action. Therefore, the claim is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action."); *Fleisher*, 858 F. Supp. 2d at 302 (citing *Intellectual Capital Partner*, 2009 WL 1974392, at *6). Southern Coal's motion to amend thus should also be denied as to its second counterclaim for declaratory relief.

---

[7] Southern Coal's use of the term "further" is suspect.  The Term Sheet addressed coal delivery during 2016, while the 2015 Agreement and the Amended Agreement addressed delivery through March 2017.  (Dkt. 39-1 at 6, Dkt. 39-2 at 4, Dkt. 39-3 at 1)  There is no "further" performance contemplated at this point in 2019.  Southern Coal's deployment of the term "further" suggests there will be future conduct of the parties that would potentially merit declaratory judgment relief, rather than past conduct, rights and obligations that already are subsumed by Algoma's breach of contract claims and do not merit declaratory relief.

18

## Conclusion

Southern Coal unduly delayed, has failed to show that it was diligent in pursuing its amendment to add four counterclaims, and has failed to demonstrate good cause for the amendment.   All but one part of one counterclaim is futile.  Amending at this time will unduly prejudice Algoma.  For the foregoing reasons, I recommend Southern Coal's motion to amend be DENIED in its entirety.  Pursuant to 28 U.S.C. §§ 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Analisa Torres, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, 500 Pearl Street, New York, New York 10007.  **Failure to file timely objections will preclude appellate review.**

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:  August 27, 2019
       New York, New York

Copies transmitted to all counsel of record.