UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ESSAR STEEL ALGOMA INC.,

               Plaintiff,

-against-

NEVADA HOLDINGS, Inc., f/k/a SOUTHERN
COAL SALES CORPORATION, et al.,

               Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/18/2020

17 Misc. 360 (AT) (RWL)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff, Essar Steel Algoma Inc., initiated this action against Defendant, Nevada Holdings, Inc., f/k/a Southern Coal Sales Corporation ("Southern Coal"), for breach of a coal supply contract. ECF No. 1. On December 7, 2018, Plaintiff filed a second amended complaint, adding Defendants James C. Justice Companies, Inc., James C. Justice Companies, LLC, Bluestone Industries, Inc., Bluestone Coal Corporation, Bluestone Mineral, Inc., f/k/a Mechel Bluestone, Bluestone Energy Sales Corporation, A&G Coal Corporation, Tams Management Inc., Encore Leasing LLC, Bluestone Resources Inc., Justice Family Farms, LLC, and Southern Coal Corporation (collectively, the "Justice Parties"), as alter egos of Southern Coal. *See* Second Amended Complaint ("SAC") at 1, ECF No. 106; *see id.* ¶ 3. The Justice Parties deny that they are alter egos and move to dismiss the SAC for lack of personal jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). ECF No. 145; Def. Mem. at 1, ECF No. 145-1. For the reasons stated below, the motion is DENIED.

**BACKGROUND**

    This action arises from coal supply agreements between Plaintiff and Southern Coal. SAC ¶¶ 4, 32–44. Plaintiff is "an integrated primary steel producer." *Id.* ¶ 25. Southern Coal is

a producer, procurer, and seller of coal, and one of Plaintiff's coal suppliers. *Id.* ¶¶ 26–27. Plaintiff alleges that Southern Coal repeatedly breached its agreements with Plaintiff by failing to deliver the quantity of coal specified in the contracts and by delivering coal that does not meet quality specifications. *Id.* ¶ 5; *see also* ¶¶ 6–9, 45–81. Exhibit 2 of the original supply agreement sets forth monetary penalties for nonconforming coal and Plaintiff claims that more than $1,200,000 is due under that provision. *See id.* ¶¶ 9, 78, 81; *see also* Exhibit 2, ECF No. 38-1.

Plaintiff alleges that all the Defendant companies are owned by members of the Justice family, including Jim Justice, the Governor of West Virginia, and his son Jay Justice. SAC ¶¶ 83, 88–89; *see also* Def. Mem. at 2. Plaintiff claims that Southern Coal is an undercapitalized sister entity to, or a subsidiary of, the Justice Parties, "which exert complete dominion and control over and therefore operate over Southern Coal as its instrumentalities and alter egos." SAC ¶ 82. According to Plaintiff, Southern Coal was undercapitalized in part because the Justice Parties "siphon[ed] money from Southern Coal," leaving it "unable to perform its contractual obligations," and rendering Southern Coal "judgment-proof." *Id.* ¶ 209. Plaintiff also alleges that the Justice Parties and Southern Coal share an overlap of officers, directors, office locations, employees, and computer systems. *Id.* ¶¶ 89, 156, 161–162, 167, 181, 186, 196–197.

The Justice Parties now move to dismiss the SAC for failure to state a claim and lack of personal jurisdiction. ECF No. 145.

## DISCUSSION

I. Legal Standard

    A. Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. A court must accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citation omitted).

    B. Personal Jurisdiction

Alter ego entities are a single entity for purposes of personal jurisdiction, which means that a defendant's alter egos are subject to personal jurisdiction if the court already has personal jurisdiction over the defendant. *See Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009). Because the substantive claims bear on whether the Court has personal

3

jurisdiction over the Justice Parties, the Court first addresses the sufficiency of Plaintiff's claim that the Justice Parties are alter egos of Southern Coal.

II.     Analysis

       A. Extrinsic Evidence

In deciding a motion to dismiss, a court "may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005); *see also DoubleLine Capital LP v. Odebrecht Fin., Ltd.*, 323 F. Supp.3d 393, 457 (S.D.N.Y. 2018) (refusing to consider deposition testimony cited in motion to dismiss because the testimony was not integral to the second amended complaint). "A document is integral to the complaint where the complaint relies heavily upon its terms and effect." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (internal quotation marks and citation omitted).

Significant portions of the Justice Parties' motion to dismiss rely on extrinsic evidence not relevant to the SAC. For example, the motion to dismiss dedicates seven pages to the expert report of Aaron Heighton, *see* Def. Mem. at 15–22, a report created five months after the SAC was filed, *see id.* at 15. Obviously, the report is neither a document "upon which the complaint relies," nor "integral" to the SAC, and, therefore, will not be considered by the Court. *Subaru*, 425 F.3d at 122. Likewise, the Court will not consider the multiple citations to the deposition of Stephen Ball, as his deposition took place two months after the SAC was filed. *See* Def. Mem. at 9; *see also Subaru*, 425 F.3d at 122; *DoubleLine*, 323 F. Supp.3d at 457.

       B. Choice of Law

Because this Court's subject matter jurisdiction is grounded on diversity between the parties, the Court first determines the body of substantive law that applies to Plaintiff's alter ego

claims. *See Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 419 (2d Cir. 2001). "The state law to be applied is determined by the choice of law principles of the forum state." *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993). New York's choice of law rules provide that "the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders." *Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas*, 509 F. App'x 54, 57 n.2 (2d Cir. 2013) (internal quotation marks and citation omitted). Because Southern Coal was incorporated in Delaware, SAC ¶ 1, Delaware law controls in evaluating Plaintiff's alter ego claims.

### C. Alter Ego Allegations

In determining whether to treat separate legal entities as alter egos, two questions must be considered: "(1) whether the entities in question operated as a single economic entity, and (2) whether there was an overall element of injustice or unfairness." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir. 2008) (citing *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995) (applying Delaware law)). Defendant argues that Plaintiff's complaint fails to meet both prongs. Def. Mem. at 3. The Court disagrees.

#### i. Single Economic Entity

To satisfy the first prong, a plaintiff must allege more than "mere domination and control" of the subordinate entity—it must allege "exclusive domination and control" such that the subordinate entity "no longer has legal or independent significance of its own." *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 975 F. Supp. 2d 392, 402 (S.D.N.Y. 2013) (internal quotation marks, citations, and alterations omitted). In evaluating whether there is "exclusive domination and control," courts consider the following factors:

> whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate

5

>records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

*Id.* at 403 (citation omitted). A plaintiff need not allege all of these factors—only "some combination." *NetJets*, 537 F.3d at 177 (internal quotation marks and citation omitted); *see also Nat'l Gear*, 975 F. Supp. 2d at 403 ("[A] [p]laintiff may survive a motion to dismiss by pleading other relevant allegations regarding the parent's complete domination.").

The SAC sets forth specific allegations supporting the assertion that Southern Coal was undercapitalized and that its funds were siphoned off, further contributing to undercapitalization: an inability to fund its contractual obligations; mingling of funds; and an overlap of officers, directors, office locations, and employees of Southern Coal and the Justice Parties. *See, e.g.*, SAC ¶¶ 89, 156, 161–162, 167, 181, 186, 196–197. For example, Plaintiff alleges that Bluestone Resources, Inc. issued Plaintiff invoices in 2016 for coal that was delivered under Plaintiff's agreement with Southern Coal. *Id.* ¶ 167. One invoice directed Plaintiff to remit payment to a bank account in the name of "Bluestone Energy Sales Corporation," one of the Justice Parties. *Id.* The business address listed on the invoice for Bluestone Energy Sales Corporation is the same as the principal place of business of Southern Coal. *Id.* Moreover, Plaintiff alleges that the information systems used by Southern Coal and the Justice Parties is the same, as Southern Coal employees had Bluestone and Justice Corporation email addresses and email signatures. *Id.* ¶¶ 156, 161–162.

These facts sufficiently allege that the Justice Parties did not treat Southern Coal "as a distinct economic entity." *NetJets*, 537 F.3d at 177 (internal quotation marks and citation

6

omitted). The Justice Parties argue that Plaintiff misconstrues "how affiliated entities operate in the coal industry." Def. Mem. at 2–3. In other words, the Justice Parties contend that they are not alter egos of Southern Coal because such arrangements are typical in the coal industry. *See id.* The Court is not persuaded. That other entities in the coal industry intertwine corporate structures does not mean that such entities are not operating as alter egos or that the Justice Parties are not operating as alter egos here. Moreover, the Justice Parties have not provided legal authority to justify their "everyone is doing it" defense to alter ego liability. Even if the Justice Parties are correct in stating that such conduct is typical in the coal industry, the Court must accept the factual allegations in the complaint as true, and draw all reasonable inferences in favor of Plaintiff, not Defendants. *See Chambers*, 282 F.3d at 152. Accepting Plaintiff's allegations that Southern Coal (1) was undercapitalized, (2) had its funds siphoned off by the Justice Parties, and (3) shared a significant number of management personnel with the Justice Parties, as true, the Court finds that Plaintiff has plausibly alleged, "a combination of factors" that Southern Coal and the Justice Parties operated as single economic entity. *See NetJets*, 537 F.3d at 177.

        ii.    Injustice or Unfairness

The second question the Court considers in determining whether to treat separate legal entities as alter egos is whether there is an overall element of injustice or unfairness. *NetJets*, 537 F.3d at 177 ("[C]ourts look behind the corporate curtain generally where the facts indicate that the corporate entity has been or is being used by those in control . . . to promote injustice." (internal quotation marks, alteration, and citation omitted)). A plaintiff "need not prove that the corporation was created with fraud or unfairness in mind," rather, it "is sufficient to prove that it was so used." *Id.* at 177.

7

Allegations of undercapitalization and siphoning of funds are sufficient to satisfy the "injustice or unfairness" element. *See, e.g.*, *id.* at 183 (holding that factfinder could infer payments to corporation were mischaracterized as loans in order to mask illegal withdrawals, "and could thereby properly find fraud or an unfair siphoning" of assets); *McBeth v. Porges*, 171 F. Supp. 3d 216, 234 (S.D.N.Y. 2016) (holding that allegation that defendant was grossly under-capitalized, meaning that it lacked sufficient capital to cover its own reasonably anticipated expenses, among other allegations, was sufficient to allege that defendant and related business entities operated as a single entity); *De Sole v. Knoedler Gallery, LLC*, 139 F. Supp. 3d 618, 669 (S.D.N.Y. 2015) (reasonable jury could find an overall element of injustice or unfairness based on evidence that one corporation siphoned millions of dollars from another); *TradeWinds Airlines, Inc. v. Soros*, No. 08 Civ. 5901, 2012 WL 983575 (S.D.N.Y. Mar. 22, 2012) (holding that allegation that defendants "siphoned funds from" corporation "and thus improperly left it undercapitalized" was sufficient to show fundamental injustice); *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 151–52 (S.D.N.Y. 2012) (holding that allegation that defendants siphoned funds indicated that they operated as an economic entity and also "provide the requisite element of . . . inequity").

Plaintiff has sufficiently alleged that Southern Coal was undercapitalized because funds were drained off by and to the Justice Parties. SAC ¶¶ 100–147. For example, Plaintiff alleges that millions of dollars that Plaintiff paid Southern Coal were immediately transferred to the Justice Parties upon receipt. *Id.* ¶ 94. The Justice Parties argue that there is no element of injustice or unfairness because Southern Coal actually delivered coal pursuant to the purchasing agreements. Def. Mem. at 13. They contend that notwithstanding impediments faced by Southern Coal in effectuating full performance, Southern Coal attempts to "make it work" serve

as "a testament to [Southern Coal's] good faith." *Id.*  The fact remains, however, that Plaintiff has alleged that Southern Coal did not deliver the quantity or quality of coal it was obligated to provide, and that it transferred its available funds to the Justice Parties, leaving it "unable to perform its contractual obligations," and rendering it "judgment-proof," SAC ¶ 209; an allegation that the Court must accept as true for the purposes of resolving this motion to dismiss. *See Chambers*, 282 F.3d at 152.  These facts plausibly allege an overall element of unfairness and injustice.  *See NetJets*, 537 F.3d at 183.

Accordingly, the Justice Parties' motion to dismiss for failing to plausibly plead alter ego claims is DENIED.

### D.  Personal Jurisdiction

"In general, alter-egos are treated as one entity for jurisdictional purposes." *Transfield*, 571 F.3d at 224 (internal quotation marks and citation omitted).  Where a plaintiff can establish its alter ego claims, the alter ego entities are subject to the Court's personal jurisdiction by way of the defendant being subject to personal jurisdiction. *See Essar Steel Algoma Inc. v. S. Coal Sales Corp.*, No. 17 Misc. 360, 2018 WL 6332900, at *5 (S.D.N.Y. Oct. 29, 2018); *see also Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, No. 09 Civ. 6148, 2012 WL 12932049, at *14 (S.D.N.Y. July 17, 2012), *report and recommendation adopted*, 896 F. Supp. 2d 320 (S.D.N.Y. 2012) (exercising personal jurisdiction over a defendant because it was the alter ego of party that consented to personal jurisdiction in New York). Moreover, the "standard for piercing the corporate veil for purposes of personal jurisdiction . . . is a less stringent one" than the standard for imposing liability.  *Cardell Fin. Corp.*, 2012 WL 12932049, at *14 (internal quotation marks and citation omitted); *see also Bank of Am. v. Apollo Enter. Sols., LLC*, No. 10 Civ. 5707, 2010 WL 4323273, at *12 (S.D.N.Y. Nov. 1, 2010) (noting that courts apply a "less onerous standard"

when evaluating personal jurisdiction under an alter ego theory than the standard required for piercing the corporate veil for liability purposes (internal quotation marks omitted)).

Defendant contends that the SAC does not "contain any factual basis for the Court's exercise of personal jurisdiction over" the Justice Parties.  Def. Mem. at 22.  The Court disagrees.  Because Southern Coal consented to personal jurisdiction in New York by executing the coal supply agreement, *see, e.g.*, *id.*; ECF No. 38-1 §11.6; Pl. Opp. at 10, ECF No. 153, the Justice Parties, as alter egos, are also subject to the Court's personal jurisdiction.  *See Transfield*, 571 F.3d at 224.

## CONCLUSION

For the foregoing reasons, the Justice Parties' motion to dismiss the SAC is DENIED. The parties shall appear for a case management conference on **June 8, 2020**, at **11:00 a.m.**  By **June 1, 2020**, the parties shall submit their joint status report.  *See* ECF No. 29 ¶ 16.

The Clerk of Court is directed to terminate the motion at ECF No. 145.

SO ORDERED.

Dated: May 18, 2020
      New York, New York

                                                        ANALISA TORRES
                                         United States District Judge