## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Release ("**Agreement**") is entered into by and between Algoma Steel Inc., f/k/a Essar Steel Algoma, Inc. ("**Algoma**") and Nevada Holdings, Inc., f/k/a Southern Coal Corporation ("**Southern Coal**"); James C. Justice Companies, Inc.; James C. Justice Companies, LLC; Bluestone Industries, Inc.; Bluestone Coal Corporation; Bluestone Mineral, Inc., f/k/a Mechel Bluestone; Bluestone Energy Sales Corporation, A&G Coal Corporation, Tams Management Inc.; Encore Leasing LLC; Bluestone Resources Inc.; Justice Family Farms, LLC; Bluestone Coal Sales Corporation, and Southern Coal Corporation (collectively, "**Justice Parties**")(each referred individually to herein as a "**Party**" and collectively as the "**Parties**").

## RECITALS

WHEREAS, on or about November 1, 2015, Algoma and Southern Coal entered into a Coal Supply Agreement, which was thereafter amended with the Amending Agreement to Coal Supply Agreement dated April 25, 2016 and the Term Sheet dated September 22, 2016 (collectively, the "**CSA**");

WHEREAS, on March 10, 2017, Algoma commenced a civil action against Southern Coal by the filing of a complaint in the United States Bankruptcy Court for the District of Delaware (the **"Bankruptcy Court"**), styled *Essar Steel Algoma Inc., et al. v. Southern Coal Sales Corporation* (Case No 15-12271 (BLS));

WHEREAS**,** on September 15, 2019, the Bankruptcy Court issued an order transferring the case to the United States District Court for the Southern District of New York, where it was styled *Essar Steel Algoma, Inc. v. Southern Coal Sales Corporation*, Case No. 1:17-mc-360-AT-RWL (the "**Lawsuit**");

WHEREAS, on April 23, 2018, Algoma filed an Amended Complaint in the Lawsuit, and on December 7, 2018, Algoma filed a Second Amended Complaint in the Lawsuit adding the Justice Parties as Defendants;

WHEREAS, in the Lawsuit, Algoma alleges, in sum and substance, that Southern Coal breached the CSA by failing to provide coal in the quantity and quality set forth in the agreement, and the Justice Parties were alter egos of Southern Coal;

WHEREAS, the Parties desire to enter into this Agreement in order to fully and finally resolve and release all claims between them regarding the Lawsuit, without further litigation;

NOW, THEREFORE, in consideration of the foregoing and the mutual promises, releases, undertakings, and other provisions and agreements set forth herein, the sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

## **TERMS**

1.  **Representation and Warranties of Southern Coal and Justice Parties**.

    a.  Southern Coal and Justice Parties represent and warrant to Algoma as follows:

        i.  **Validity**.  This Agreement has been duly executed and delivered by Southern Coal and Justice Parties and is a legal, valid, and binding obligation of Southern Coal and Justice Parties enforceable against each of them, joint and severally, in accordance with its terms;

        ii.  **Capacity**.  Southern Coal and Justice Parties each have the capacity to execute, deliver, and carry out the terms and provisions of this Agreement and the transactions contemplated thereby, including but not limited to the ability to make the Payments referenced in Section 2 below;

        iii.  **Security.**  Bluestone Resources, Inc. ("**Bluestone Resources**"), one of the Justice Parties, represents and warrants that it has the financial capacity to fully perform its obligations to Algoma pursuant to this Agreement and the Coal Purchase and Sale Agreement, dated September 22, 2021 (the "Settlement Coal Agreement")[1],  and guarantees the performance of Southern Coal and Justice Parties pursuant to this Agreement the Settlement Coal Agreement;

        iv.  **Corporate Structure**.  Bluestone Resources warrants that it will make no changes to its corporate structure or assets that would have the effect of reducing its financial capacity to satisfy the Settlement Value, as defined in Paragraph 2 herein, owed to Algoma in the event of a default of this Agreement or the Settlement Coal Agreement by Southern Coal or the Justice Parties;

        v.  **Reliance.** Southern Coal and Justice Parties each expressly acknowledge and confirm that the foregoing representations and warranties are being specifically relied upon by Algoma as a material inducement to Algoma to enter into this Agreement; and

        vi.  **Survival.** The foregoing representations and warranties shall survive the execution and delivery of this Agreement and the documents, agreements, and instruments to be executed or delivered herewith.

2.  **Consideration.**

    a.  In settlement of Algoma's claims asserted in the Second Amended Complaint, Southern Coal and Justice Parties agree to pay to Algoma either: (1) a lump

---

[1] The specifics of Bluestone Coal Sales Corporation's and Bluestone Resources' obligations regarding coal delivery are set forth in the Settlement Coal Agreement, attached hereto as Ex. A and incorporated herein by reference.

sum cash payment in the amount of $4,425,000.00 (Four million Four Hundred Twenty-Five Thousand United States Dollars), paid upon execution of this Agreement, or (2) over a three-year period, cash payments and/or coal deliveries pursuant to the Settlement Coal Agreement among Algoma and Bluestone Coal Sales Corporation totaling $5,750,000.00 (Five Million, Seven Hundred Fifty Thousand United States Dollars)  (the "**Settlement Value**") in the following amounts and at the following times:

    i.  Assuming Southern Coal and the Justice Parties do not elect to make a single lump sum settlement payment, Southern Coal / Bluestone Coal Sales Corporation shall give written notice to Algoma upon execution of this Agreement of its election to either: (1) make a cash settlement payment in the amount of $1,916,666.00 (One Million, Nine Hundred Sixteen Thousand, Six Hundred Sixty-Six United States Dollars), which payment Algoma must receive upon execution of this Agreement; or (2) make deliveries in the 2021 shipping season of a total of ███████ net tons of coal, as set forth in the Settlement Coal Agreement;

    ii.  Prior to July 31, 2021, Southern Coal / Bluestone Coal Sales Corporation shall give written notice to Algoma of its election to either: (1) make a cash settlement payment in the amount of $1,916,666.00 (One Million, Nine Hundred Sixteen Thousand, Six Hundred Sixty-Six United States Dollars), which payment Algoma must receive on or before July 31, 2021; or (2) make deliveries in the 2022 shipping season of a total of ███████ net tons of coal, as set forth in the Settlement Coal Agreement;

    iii.  Prior to July 31, 2022, Southern Coal / Bluestone Coal Sales Corporation shall give written notice to Algoma of its election to either: (1) make a cash settlement payment in the amount of $1,916,666.00 (One Million, Nine Hundred Sixteen Thousand, Six Hundred Sixty-Six United States Dollars), which payment Algoma must receive on or before July 31, 2022; or (2) make deliveries in the 2023 shipping season of a total of ███████ net tons of coal, as set forth in the Settlement Coal Agreement;

    iv.  Additionally, Southern Coal shall pre-pay to Algoma interest on the outstanding Settlement Value.

        1.  Such interest payments shall be calculated using the US (Fed) prime interest rate as of the date of execution of this Agreement.  The Parties expressly agree, however, that the interest rate used to calculate the interest payment shall not be less than 3%, nor shall it be more than 6%.  In other words, if the US prime interest rate is less than 3% at the time of the execution of this agreement, the interest payment shall be

calculated using a 3% interest rate.  If the US prime interest rate is more than 6% at the time of the execution of this Agreement, the interest payment shall be calculated using a 6% interest rate.

2.  Upon execution of this Agreement, Southern Coal shall make the interest payment to Algoma for the full cash Settlement Value for the period of April 1, 2020 to March 31, 2021.

3.  On April 1, 2021, Southern Coal shall make the interest payment to Algoma for the remaining cash Settlement Value for the period of April 1, 2021 to March 31, 2022.

4.  On April 1, 2022, Southern Coal shall make the interest payment to Algoma for the remaining cash Settlement Value for the period of April 1, 2022 to March 31, 2023.

v.  Additionally, should Southern Coal / Bluestone Coal Sales Corporation elect to make coal deliveries to Algoma pursuant to the Settlement Coal Agreement in lieu of a cash settlement payment, and should Algoma properly terminate the Settlement Coal Agreement pursuant to Paragraph 17 therein, Southern Coal / Bluestone Coal Sales Corporation must pay to Algoma within seven (7) days in a single lump sum payment the remaining Settlement Value due and owing to Algoma as of the date of its termination of the Settlement Coal Agreement.

vi.  The Payments shall be made by wire transfer of immediately available funds using the following wire transfer instructions:

Bank Name:  Royal Bank of Canada
              602 Queen Street East
              Sault Ste. Marie, ON P6A 2A4
Account Number:  █████████
Transit #:  04362
Bank #:  3
SWIFT Code:  ROYCCAT2

All payments shall be deemed made at the time Southern Coal and/or Justice Parties initiate the wire transfer in accordance with the referenced wire transfer instructions.

vii.  In the event that Southern Coal / Bluestone Coal Sales Corporation fails to provide written notice to Algoma of its election to provide a cash settlement payment or provide coal deliveries by the deadlines set forth herein, or in the event Southern Coal / Bluestone Sales Corporation fails to make an interest payment as set forth in Paragraph

4

2(a)(iv), an Event of Default has occurred as defined in Paragraph 2(b) herein, and Algoma may pursue recovery pursuant to the Consent Judgment as set forth in Paragraph 3 herein.

b. **Security**

   i. Southern Coal's performance of its obligations pursuant to this Agreement and Bluestone Coal Sales Corporation's performance of its obligations pursuant to the Settlement Coal Agreement shall be guaranteed by Bluestone Resources.

   ii. Prior to execution of this Agreement, Bluestone Resources shall provide to Algoma a comfort letter from its independent auditors, suitable to Algoma, showing that Bluestone Resources maintains the financial capacity to perform its obligations and Southern Coal's obligations pursuant to this Agreement and Bluestone Coal Sales Corporation's obligations pursuant to the Settlement Coal Agreement.

   iii. Bluestone Resources shall provide an updated comfort letter to Algoma upon reasonable request from time to time.

c. **Event of Default**

   i. It is expressly agreed that the failure of Southern Coal / Bluestone Coal Sales Corporation to provide notice of its election to make a settlement payment or coal deliveries for each year by the dates set forth above shall constitute an "**Event of Default**."

   ii. Additionally, should Bluestone Resources fail to provide Algoma a comfort letter evidencing that it has the financial ability to perform its obligations pursuant to this Agreement, that failure shall constitute an Event of Default.

   iii. Additionally, should Southern Coal / Bluestone Coal Sales Corporation elect to make a cash settlement payment for any year, the failure of Southern Coal / Bluestone Coal Sales Corporation to make the settlement payment by the payment deadline set forth herein shall constitute an Event of Default.

   iv. Additionally, should Southern Coal /Bluestone Coal Sales Corporation elect to make coal deliveries in lieu of a cash settlement payment for any year, the failure of Southern Coal / Bluestone Coal Sales Corporation at the end of any shipping calendar quarter to make pro rata deliveries of the settlement coal amount, as set forth in the Settlement Coal Agreement, shall constitute an Event of Default.

      v.    Additionally, should Southern Coal / Bluestone Coal Sales Corporation fail to make any interest payment as set forth in Paragraph 2(a)(iv), that failure shall constitute an Event of Default.

     vi.    Additionally, should Algoma properly terminate the Settlement Coal Agreement pursuant to Paragraph 17 therein, and should Southern Coal/Bluestone Coal Sales Corporation subsequently fail to pay Algoma the remaining Settlement Value due and owing to it within seven (7) days, that failure shall constitute an Event of Default.

    vii.    It is also agreed that the filing by Southern Coal or Bluestone Coal Sales Corporation or Bluestone Resources for any form of dissolution or bankruptcy protection shall constitute an Event of Default, the occurrence of which shall permit Algoma to enforce the Consent Judgment defined below in Section 3.

   viii.    Algoma is not obligated to notify Southern Coal or the Justice Parties of any Event of Default.

     ix.    Upon the occurrence of any Event of Default, the remaining settlement balance is accelerated and immediately due and owing to Algoma.

     x.    If an Event of Default occurs, Algoma shall be permitted to enforce the Consent Judgment defined below in Section 3.

3.    **Consent Judgment.**  Contemporaneously with the execution of this Agreement, Algoma, Southern Coal, and Bluestone Resources also will execute a consent judgment and stipulation of entry of judgment.

    a.    The Parties agree that the court in the Litigation shall retain jurisdiction for purposes of enforcing this Agreement.

    b.    The stipulation of entry of judgment ("**Stipulation of Entry**") shall provide for entry of the Consent Judgment in the event that Southern Coal, Bluestone Resources, Bluestone Sales Corporation and/or the Justice Parties default under their payment obligations under this Agreement or deliveries or other obligations pursuant to the Settlement Coal Agreement. The Stipulation of Entry shall be in the form attached hereto as Exhibit B.

    c.    Southern Coal's, Bluestone Resources', Bluestone Coal Sales Corporation's, and the Justice Parties' obligations to make the Payments pursuant to this Agreement and/or Coal Deliveries pursuant to the Settlement Coal Agreement shall be secured with a proposed consent judgment in favor of Algoma in the form attached hereto as Appendix to Exhibit B (the "**Consent Judgment**"). The Consent Judgment and Stipulation of Entry will be filed by Algoma subject to the following conditions:

i.   Execution of the Consent Judgment by Southern Coal and Bluestone Resources and their counsel shall occur before or concurrently with the execution of this Agreement. In this regard, Southern Coal and Bluestone Resources direct their counsel of record to execute the referenced Consent Judgment and deliver it to counsel for Algoma. Algoma shall have no obligations under this Agreement until receiving the executed Stipulation of Entry and Consent Judgment from Southern Coal and Bluestone Resources.

ii.   Algoma will forebear from filing and enforcing the Consent Judgment unless or until the occurrence of an Event of Default. If an Event of Default occurs, Algoma may file the Consent Judgment with the Court and seek to enforce it. Any payments or coal deliveries made by Southern Coal or Bluestone Coal Sales Corporation prior to an Event of Default will be credited against the Consent Judgment amount.

iii.   If Southern Coal, Bluestone Resources, and/or Bluestone Coal Sales Corporation timely make the Payments and/or coal deliveries as provided in Section 2 and the Settlement Coal Agreement, Algoma will forebear from filing and enforcing the Consent Judgment, and instead will file a notice of satisfaction of judgment and dismissal with prejudice with the Court following receipt of the final Payment, and the Consent Judgment will be held confidential in accordance with Section 8 below.

iv.   Southern Coal and Bluestone Resources expressly agree to the entry and/or domestication of the Consent Judgment in any state where Southern Coal, Bluestone Resources, and/or the Justice Parties have assets.

d.  If the Court requires additional papers from the Parties in connection with the Stipulation of Entry or Consent Judgment or requires that the substance of those documents takes a form different than Exhibit B, Southern Coal shall provide that documentation to Algoma by the Court's deadline or in any case, within one week of any such request by Algoma or the Court.

e.  If the Consent Judgment is not ordered or entered by the Court for any reason, this Agreement will remain in full effect. Algoma may pursue any and all remedies available at law and equity to enforce the Agreement, regardless of whether the Court enters the Consent Judgment.

4.    **Release by Algoma.**  As further inducement and consideration for this Agreement, Algoma, for itself and its present, former and future parent corporations, predecessors, successors, subsidiary corporations, related companies, divisions, general and limited partnerships, limited liability companies, affiliates, trusts, representatives, agents, and attorneys, and their respective present, former, and future directors, officers, shareholders, managers,

members, partners, employees, trustees, insurers, assigns, transferees, principals, agents, and attorneys agrees to fully, finally, forever, and unconditionally release, acquit, covenant not to sue and forever discharge Southern Coal and the Justice Parties and their present, former and future parent corporations, predecessors, successors, subsidiary corporations, related companies, divisions, general and limited partnerships, limited liability companies, affiliates, trusts, representatives, agents, and attorneys, and their respective present, former, and future directors, officers, shareholders, managers, members, partners, employees, trustees, insurers, assigns, transferees, principals, agents, and attorneys to the fullest extent permitted by law, of and from any and all claims that arise out of, are in any way related to, or are based in whole or in part on the subject matter of the Lawsuit; provided, however, that any obligations created by or set forth in this Agreement or the Settlement Coal Agreement shall not be released.

5.      **Release by Southern Coal and Justice Parties.**  As further inducement and consideration for this Agreement, Southern Coal and Justice Parties and their present, former and future parent corporations, predecessors, successors, subsidiary corporations, related companies, divisions, general and limited partnerships, limited liability companies, affiliates, trusts, representatives, agents, and attorneys, and their respective present, former, and future directors, officers, shareholders, managers, members, partners, employees, trustees, insurers, assigns, transferees, principals, agents, and attorneys, agree to fully, finally, forever, and unconditionally release, acquit, covenant not to sue and forever discharge Algoma and its present, former and future parent corporations, predecessors, successors, subsidiary corporations, related companies, divisions, general and limited partnerships, limited liability companies, affiliates, trusts, representatives, agents, and attorneys, and their respective present, former, and future directors, officers, shareholders, managers, members, partners, employees, trustees, insurers, assigns, transferees, principals, agents, and attorneys to the fullest extent permitted by law, of and from any and all claims that arise out of, are in any way related to, or are based in whole or in part on the subject matter of the Lawsuit; provided, however, that any obligations created by or set forth in this Agreement and the Settlement Coal Agreement shall not be released.

6.      **Effective Date**.  This Agreement is effective as of the date that the Agreement, Settlement Coal Agreement, Stipulation of Entry, and Consent Judgment are fully executed by each and all of the Parties that are signatories to those documents.

7.      **Time is of the Essence**.  Time is of the essence in the Payments and performance of each of the obligations set forth herein and with respect to all conditions to be satisfied.

8.      **Confidentiality.**  The Parties agree to keep confidential the terms of this Agreement.  Should any Party disclose the terms of this Agreement, then that Party shall be liable to any Party damaged by such breach.  Because the Court requires that this Agreement be filed on the public docket in order to retain jurisdiction to enforce this Agreement, the Parties also agree that they will jointly

request that the Court approve the filing of a redacted version of this Agreement that redacts confidential information, such as pricing, quantity, and quality information.  Nothing in this Agreement is intended to interfere with the Parties' rights to disclose the terms of this Agreement to their attorneys, financial advisors and/or accountants, law enforcement, regulators, or as required by law, including any valid legal subpoena issued under the authority of any court of competent jurisdiction.

9.    **Governing Law and Jurisdiction.**  This Agreement shall be interpreted under the laws of the State of New York, without giving effect to conflict of law principles.  The Parties consent to the personal jurisdiction of the federal and state courts located in the State of New York.

10.   **Severability**.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement, it being the Parties' intention that each and every provision of this Agreement be enforced to the fullest extent permitted by applicable law.

11.   **Binding on Successors and Assigns.**  This Agreement shall be binding upon and shall inure to the benefit of the Parties and their predecessors, heirs, executors, administrators, representatives, successors, assignees, licensees, and transferees.  No Party may transfer its respective rights or obligations under this Agreement to any third party without the prior written consent of the other Party, which may be withheld in a Party's sole, subjective, and absolute discretion and without regard to any good faith obligation or reasonable business judgment.

12.   **Unknown Claims**.  Each of the Parties acknowledges that there is risk that subsequent to the execution of this Agreement, it may discover facts or may discover, suffer, or incur actions or causes of action which were unknown or unanticipated at the time of this Agreement which may have materially affected their respective decisions to give the releases contained in this Agreement (collectively, the "**Unknown Claims**").  Despite this knowledge and understanding, each of the Parties understands and agrees: (1) that it is assuming the risk of each and every category of every Unknown Claim, and (2) that it is releasing all claims of every kind or nature whatsoever, known or unknown, foreseen or unforeseen, suspected or unsuspected, and in connection herewith.

13.   **No Assignment.**  Each Party warrants, covenants, and represents that, as of the Effective Date, it has not assigned, transferred, or conveyed or purported to have assigned, transferred, or conveyed, to any person or entity, any of the released claims.

14. **Attorneys' Fees**. Upon an Event of Default, it is acknowledged and agreed that Algoma shall be entitled to reasonable attorneys' fees in enforcing the Consent Judgment, which includes, but is not limited to, any collection or garnishment action instituted by Algoma against Southern Coal, Bluestone Resources, the Justice Parties, or any one of them.

15. **Counterparts.** This Agreement may be executed in one or more counterparts and provided to the other Parties by email or facsimile, each of which shall be deemed an original, and all of which shall collectively constitute one complete original Agreement.

16. **Descriptive Headings: Construction**. The headings in this Agreement are intended for convenient references only and shall not in any way limit, amplify, or be used in interpreting the terms of this Agreement. The masculine, feminine, or neutral gender in the singular or plural shall be deemed to include the others wherever the context of this Agreement so requires. This Agreement shall not be construed against any party hereto as the drafter of this Agreement.

17. **Voluntary Agreement**. The Parties each represent and warrant to the others that they are represented by legal counsel of their choice, that they have consulted with such counsel regarding this Agreement, that they are fully aware of the terms and provisions contained herein and their effect, and that they have voluntarily and without coercion or duress of any kind entered into this Agreement.

18. **Entire Agreement.** This Agreement, together with the Settlement Coal Agreement, sets forth the entire and integrated agreement of the Parties with respect to the subject matter hereof and supersedes all prior negotiations, representations, or agreements, either written or oral. All prior communications, negotiations, agreements or drafts relating to this Agreement are merged into and superseded by this Agreement and the Settlement Coal Agreement. No provisions hereof may be amended, nor any right hereunder waived, except by written instrument executed by all Parties.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement and Release to be executed as of the date indicated below.

ALGOMA STEEL INC.

By:    John Naccarato

Title:   VP, Strategy

Date:    September 22, 2020

NEVADA HOLDINGS, INC., f/k/a
SOUTHERN COAL SALES CORPORATION

JAMES C. JUSTICE COMPANIES, INC.

JAMES C. JUSTICE COMPANIES, LLC

BLUESTONE INDUSTRIES, INC.

BLUESTONE COAL CORPORATION

BLUESTONE MINERAL, INC., f/k/a
MECHEL BLUESTONE

BLUESTONE ENERGY SALES
CORPORATION

A&G COAL CORPORATION

TAMS MANAGEMENT, INC.

ENCORE LEASING LLC

BLUESTONE RESOURCES, INC.

JUSTICE FAMILY FARMS, LLC

BLUESTONE COAL SALES
CORPORATION

SOUTHERN COAL CORPORATION

By:    James C. Justice III

Title:   President

Date:    September 22, 2020